UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROLANDO PENATE, )<br>      Plaintiff )<br>)<br>V. )<br>)<br>ANNE KACZMAREK, et al. )<br>      Defendants ) | Civil Action No. 17-30119-KAR |

**DEFENDANT ROBERT IRWIN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS**

**I.    INTRODUCTION**

Plaintiff Rolando Penate ("Penate") seeks to hold Defendant Robert Irwin ("Det. Lt. Irwin") a former Detective Lieutenant of the Massachusetts State Police ("MSP") [1], responsible as one of the seventeen (17) defendants named who are alleged to have played a role in what Penate refers to as "overlapping conspiracies to suppress highly exculpatory evidence." Complaint, p. 1.

Penate brings two counts against Det. Lt. Irwin. His first claim is brought pursuant to 42 U.S.C. § 1983. *See* Id. Count III, p. 48. Penate alleges that Det. Lt. Irwin acted in concert with Defendants Joseph Ballou ("Sgt. Ballou"), a sergeant with the MSP, and Randy Thomas (Trooper Thomas"), a trooper with the MSP to violate his constitutional right to due process. Id. ¶¶ 418-427. Specifically, Penate claims that they "intentionally, recklessly, and/or with deliberate indifference to their legal obligations, concealed *Brady* material, lied about, and otherwise failed to disclose *Brady* material…" to Hampden County Assistant District Attorneys ("ADA") in general as well as the Hampden County ADA prosecuting Penate. Id.

---

[1] Det. Lt. Irwin was promoted to the rank of Major in April of 2016. For purposes of consistency with the facts alleged in Penate's Complaint, he will be referred to as Det. Lt. Irwin throughout this motion.

1

Penate's second claim against Det. Lt. Irwin which includes all other defendants being sued individually is a state law claim alleging intentional infliction of emotional distress.  *See* Id. Count VIII, p. 56.

In making his claims against Det. Lt. Irwin, Penate has cast a wide net that fails to account for individual actions and instead lumps the collective behavior of all named defendants together in the hopes of stating a viable claim.  The Complaint contains a fact pattern encompassing three hundred seventy-five (375) paragraphs of allegations spanning over a period of thirty (30) years.  *See generally* Complaint.  Penate's allegations against Det. Lt. Irwin, however, are limited to a short span of time beginning in January, 2013, when the MSP were assigned to investigate suspected criminal conduct on the part of Amherst Drug Lab Chemist Sonja Farak ("Farak").  Complaint ¶ 191.

The investigation included a search of Farak's vehicle.  Id. ¶¶ 197-199.  Det. Lt. Irwin participated in that search.  Id. ¶¶ 197-199.  The search revealed a collection of approximately 300 pages of documents which included the alleged exculpatory evidence relative to Penate's claims here.  ¶ 201.  Evidenced by the facts alleged by Penate that followed the search, once the documents were seized, disclosed and delivered to the proper governmental entities, Det. Lt. Irwin's involvement in the matter essentially ended.  Any further allegations of misconduct by Det. Lt. Irwin are in the form of conclusory allegations that simply do not rise to the level of the constitutional deprivations claimed by Penate in this case.

For these reasons and those stated below, Det. Lt. Irwin respectfully moves that this Honorable Court dismissed Counts III and VIII brought against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

II.     **FACTS**

Taking all well pleaded facts as alleged in Penate's complaint as true, the facts are as follows:

On November 16, 2011, Penate was arraigned in Springfield District Court on charges stemming from his alleged sale of narcotics to an undercover Springfield, Massachusetts police officer on three (3) separate occasions. Complaint ¶¶ 110-125. He entered a plea of not guilty. Id. ¶ 125. Det. Lt. Irwin had no involvement in Penate's arrest. *See* Id. ¶ 110-124.

The narcotics allegedly sold by Penate to the Springfield police officer were delivered to the Amherst Drug Lab for testing the same day of Penate's arraignment. Id. ¶ 127. Farak, a chemist working in the Amherst Drug Lab, was assigned to test all the narcotic samples that Penate allegedly sold to the undercover Springfield police officer. Id. ¶ 135. Farak purportedly tested the samples related to Penate's case on December 22, 2011, January 6, 2012, and January 9, 2012. Id. ¶ 142. The tests on each sample purportedly came back positive for the presence of a controlled substance. Id. ¶ 143. Farak signed drug certifications confirming the findings. Id. ¶ 161. Det. Lt. Irwin had no involvement in the testing or certification of the samples delivered to the Amherst Drug Lab in regard to Penate's criminal case. *See* Id. ¶ 135-151.

Penate's case was presented to the Grand Jury by the Hampden County District Attorney's Office on February 1, 2012. Id. ¶ 160. Copies of the drug certificates signed by Farak at the time of testing were presented to the Grand Jury. Id. ¶ 161. The Grand Jury returned a 13 Count indictment against Penate. Id. ¶ 162. Penate was arraigned in Superior Court on February 10, 2012, and entered a plea of not guilty. Id. ¶ 163. Det. Lt. Irwin had no involvement in Penate's indictment or arraignment. *See* Id. ¶ 152-164.

3

In January 2013, suspicions were raised as to the possibility that Farak was mishandling narcotics delivered to her at the Amherst Drug Lab for testing. Id. ¶¶ 184-189. This suspicion led to a Massachusetts State Police investigation. Id. ¶¶ 184-196. Det. Lt. Irwin had no involvement in the events occurring at the Amherst Drug Lab leading up to the initiation of the investigation. Id. ¶¶ 171-190.

On January 19, 2013, after having interviewed Farak regarding evidence suggesting she had been mishandling narcotic samples, MSP Sgt. Ballou and MSP Trooper Thomas, applied for and were granted an application to search Farak's vehicle. Id. ¶¶ 5, 7 and 197. That same day, Trooper Thomas and Sgt. Ballou along with Det. Lt. Irwin performed the search. Id. ¶ 200. The search revealed "approximately 300 pages of paper" which included a "ServiceNet Diary Card" in which Farak memorialized her use of narcotics at the Amherst Lab. Id. ¶ 145, 201. The information contained on the diary card is alleged to have indicated that Farak had been using narcotics at the Amherst Lab on December 22, 2011, and January 9, 2012, both days in which she tested the samples from Penate's criminal case. Id. ¶¶ 146, 148.

Sgt. Ballou turned over the approximately 300 pages of documentation seized from Farak's vehicle to the Springfield Attorney General's Office ("AGO"). Id. ¶ 202. Thereafter, Sgt. Ballou performed his own review of the documents. Id. ¶ 203. That review revealed the ServiceNet Diary Card as well as "dozens of other documents related to Farak's use of narcotics at the Amherst Drug Lab." Id. Sgt. Ballou notified John Verner ("AAG Verner"), Chief of the Springfield AGO's Criminal Bureau, Defendant Anne Kaczmarek ("AAG Kaczmarek"), the AGO's Enterprise and Major Crimes Unit Assistant Attorney General

assigned to prosecute Farak, Det. Lt. Irwn and Trooper Thomas of the discovered documents. Id. ¶ 204.

On the morning of January 23, 2013, while emailing regarding the content of an affidavit Sgt. Ballou was going to submit in support of an application for a warrant to search a tote bag belonging to Farak, AAG Verner suggested to Sgt. Ballou that the documents seized from Farak's vehicle be disclosed as "personal papers." Id. ¶ 205. Det. Lt. Penate is not alleged to have participated in the email exchange. Id. The affidavit subsequently submitted by Sgt. Ballou in support of the application for a warrant to search Farak's tote bag made no reference at all to the seized paperwork. Id. ¶ 206. Also on January 23, 2013, Trooper Thomas filed a return documenting the evidence that was seized from the search of Farak's vehicle. Id. ¶ 208. In the return, he referred to the approximately 300 pages of documents seized as "assorted lab paperwork." Id. He made the same reference in his police report submitted on January 23, 2013. Id. ¶ 211. Det. Lt. Irwin is not alleged to have had any involvement in the decision to refer to the paperwork as such. Id. ¶¶ 208-211.

On January 23, 2013, the day after Farak was arraigned in Belchertown District Court, Sgt. Ballou sent an email to AAG Kaczmarek, Det. Lt. Irwin and AAG Verner informing them that he had spoken to an assistant district attorney from Hampden County who advised him of a case in which it appeared Farak had tampered with some oxycodone pills. Id. ¶ 213. Sgt. Ballou met with the ADA who also advised him of a colleague who had a previous cocaine case in which Farak was the chemist testing the drug sample that turned out to be light by four grams. Id. ¶ 214. Sgt. Ballou notified AAG Kaczmarek via email that the analysis performed by Farak in the cocaine matter occurred in 2005. Id. ¶ 215. In response to the

5

information , AAG Kaczmarek wrote "Please don't let this get more complicated than we thought." Id. ¶ 216.

On February 14, 2013, Sgt. Ballou emailed AAG Kaczmarek and attached several documents seized from Farak's vehicle on January 19, 2013, which he characterized as "Farak admissions" of drug use. Id. ¶ 220. The documents included the ServiceNet Diary Cards indicating that Farak had used drugs on at least two of the days she tested the samples delivered for testing related to Penate's criminal case. Id. ¶ 221. AAG Verner and Det. Lt. Irwin were cc'd on the email. Id. ¶ 220.

On March 27, 2013, AAG Verner notified each of the Commonwealth's eleven District Attorney Offices that the AGO was investigating Farak and provided each DA with a discovery packet of potentially exculpatory evidence resulting from the investigation. Id. ¶ 232. The documents discovered by Sgt. Ballou and characterized as "Farak admissions" were not included in the documents produced. Id. ¶ 233. That same day, AAG Kaczmarek submitted a "Prosecution Memo" to AAG Verner and two other supervisors advising them that the "Farak Admissions" documents had not been submitted to the grand jury. Id. ¶ 235. Penate does not allege that Defendant Lt. Irwin had knowledge of the "Prosecution Memo" or its content. Id. ¶¶ 232-239. AAG Verner later reminded AAG Kaczmarek that those documents had not been turned over to any of the District Attorneys. Id. ¶ 236. Thereafter, AAG Kaczmarek decided that the "Farak admissions" constituting mental health records would not be disclosed as she viewed them to be "privileged." Id. ¶¶ 238-239. The ServiceNet Diary Cards were included in the "Farak admissions" that were withheld by AAG Kaczmarek. Id. Penate does not allege that Defendant Lt. Irwin played any role in AAG Kaczmarek's decision to withhold the production of the mental health records. Id. ¶¶ 232-239.

On May 14, 2013, Penate moved to compel the production of discovery related to Farak's arrest and prosecution. Id. ¶ 240. After having received no discovery in response to the motion, Penate filed a motion to dismiss his criminal charges "based upon Farak's egregious misconduct and the government's non-compliance with its obligation to turn over exculpatory evidence." Id. ¶ 242. The Court issued an order on July 23, 2013, stating that it would hold an evidentiary hearing on the motion to dismiss to determine, amongst other things, whether the controlled substances relative to Penate's case were mishandled by the Amherst Drug Lab. Id. ¶ 243.

On August 22, 2013, Penate subpoenaed AAG Kaczmarek and Sgt. Ballou to testify at the motion hearing scheduled by the Court. Id. ¶ 248. Det. Lt. Irwin was not subpoenaed to appear. Id. The subpoenas directed AAG Kaczmarek and Sgt. Ballou to bring to court any "inter and intraoffice correspondence pertaining to the scope of evidence tampering and/or deficiencies at the Amherst Drug Lab from January 18, 2013 to the present date." Id. ¶ 249. The responsibility of responding to Penate's subpoenas to AAG Kaczmarek and Sgt. Ballou was delegated to Defendant Kris Foster ("AAG Foster"), an Assistant Attorney General with the AGO. Id. ¶ 253.

After Penate served his subpoenas on AAG Kaczmarek and Sgt. Ballou, another Court consolidated fourteen unrelated post-conviction cases and scheduled them for an evidentiary hearing focused on the timing and scope of Farak's alleged misconduct. Id. ¶ 247. Sgt. Ballou received a subpoena *duces* tecum on August 30, 2013 in regard to that case requiring him to produce evidence pertaining to the investigation of Farak. Id. ¶ 263. Det. Lt. Irwin was not subpoenaed. *See* Id. AAG Kaczmarek contacted AAG Foster's supervisor, Defendant Randal Ravitz ("AAG Ravitz"), Chief of the AGO's Appeals Division and AAG Verner

notifying them of Sgt. Ballou's subpoena.  Id. ¶¶ 4, 252 and 266.  AAG Verner scheduled a meeting later that afternoon to discuss the subpoena.  Id. ¶ 267.   Those required to attend the meeting were AAG Verner, Det. Lt. Irwin, AAG Foster and AAG Ravitz.  Id. ¶ 267.

The morning after the meeting, AAG Ravitz sent an email to his Deputy Chief, Suzanne Reardon ("AAG Reardon"), AAG Foster, AAG Kaczmarek, AAG Verner, and Dean Mazzone ("Mazzone"), the Supervisor of the AGO's Enterprise and Major Crme Unit.  Id. ¶¶ 252 and 270.  The email suggested that "a rational for moving to quash, or limit the scope of [Sgt. Ballou's] subpoena" existed.  Id. ¶ 271.  This led to a second meeting to discuss the subpoena.  Id. ¶ 272.

During the meetings, AAG Kaczmarek revealed that she and Sgt. Ballou were in possession of the "Farak admissions" that had not been disclosed.  Id. ¶ 273.  AAG Kaczmarek explained that the non-disclosure was due to the fact that the undisclosed records contained information regarding Farak's medical treatment.  Id. ¶ 274. On September 6, 2013, AAG Foster filed a motion to quash Sgt. Ballou's subpoena or, in the alternative, issue a protective order for any documents deemed to be medical in nature.  Id. ¶ 275-276.  Other than his attendance at the meetings resulting in the filing the motion to quash the subpoena as it related to Farak's medical records, Det. Lt. Irwin is not alleged to have participated in the decision to file the motion.  Id. ¶¶ 247-277.

The evidentiary hearing on the unrelated consolidated post-conviction cases was held on September 9, 2013.  Id. ¶ 286-287.  In regard to AAG Foster's motion for a protective order for the "Farak admissions" she deemed to be privileged, the Court ordered her to produce the undisclosed records to the Court for an *in camera* review.  Id. ¶ 289.  AAG Kaczmarek met with Sgt. Ballou in order to review his Farak investigation file and produce

any documents therein that should be produced for the Court's *in camera* review. Id. ¶ 302-303. Det. Lt. Irwin is not alleged to have participated in this meeting. Id.

At this meeting, AAG Kaczmarek noticed that no hard copies of the "Farak admissions," that had been seized from Farak's vehicle were included in the file. Id. ¶ 303. She then advised AAG Foster that there were no documents in Sgt. Ballou's file responsive to the Court's order for an *in camera* review. Id. ¶ 304. This resulted in AAG Foster notifying the Court that a review of Sgt. Ballou's investigation file revealed that everything in it had already been produced. Id. ¶ 305. Penate makes no allegation that Det. Lt. Irwin participated in AAG Kaczmarek and AAG Foster's alleged decision to report that all documents had been produced. *See* Id. ¶¶ 286-308.

Subsequent to AAG Foster's report to the Court that all documents had been produced, Penate made continued efforts to inspect all of the records seized from Farak's vehicle. *See* Id. ¶¶ 309-340. Ultimately, the Court decided that based upon the representations made by the AGO, Penate was not entitled to the discovery he sought. Id. ¶ 340. On December 13, 2013, Penate was convicted of a single count of distributing a class a substance. Id. ¶ 376.

On October 30, 2014, Penate's criminal attorney obtained the "Farak adissions" in an unrelated Hampden County criminal case. Id. ¶ 383. Penate's attorney notified the AGO of the existence of these previously undisclosed documents. Id. ¶ 384. Based upon the AGO's failure to provide him with the "Farak admissions" prior to his conviction, Penate, through counsel, filed a motion for a new trial. Id. ¶ 386. After a six-day evidentiary hearing, the Court dismissed Plaintiff's conviction finding that AAG Kaczmarek and AAG Foster deliberately withheld exculpatory evidence from Penate. Id. ¶ 396.

III.   *APPLICABLE STANDARD*

A motion to dismiss is to be allowed when a Plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Figueroa v. Rivera,* 147 F.3d 77, 80 (1st Cir. 1998). When considering a motion to dismiss, the Court is obliged to accept the plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor. *Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999). This indulgence, however, does not require the Court to credit bald assertions, unsubstantiated conclusions, or outright vituperation. *Correa-Martinez v. Arrillaya-Belendez,* 903 F.2d 49, 52 (1st Cir. 1990). Notwithstanding the lenient modern "notice pleading" regime, a plaintiff is "required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Romero-Barcelo v. Hernandez-Agosto,* 75 F.3d 23, 28 n. 2 (1st Cir. 1996).

IV.   **ARGUMENT**

    **1.**   **Penates *Brady* Count Fail to State a Valid Claim Against Det. Lt. Irwin Under Fed. R. Civ. P. 8(a) and as a Matter of Law.**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see Cardigan Mountain Sch. v. N.H. Ins. Co.* 787 F.3d 82, 84 (1st Cir. 2015). Although a complaint need not lay out "detailed factual allegations," it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the plaintiff must plead "factual allegations … enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U. S. at 555. When a complaint pleads only "labels

10

and conclusions" or a "formulaic recitation of the elements of a cause of action" with "no further factual enhancement," it is insufficient and should be dismissed. *Id.* at 555-57. In evaluating the sufficiency of a complaint, the court first "must separate the complaint's factual allegations ... from its conclusory legal allegations (which need not be credited)." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). The court must then "determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Morales-Cruz*, 676 F.3d at 220); *see also Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

In this vein, this Circuit has consistently ruled that "vague and conclusory" allegations are insufficient to plead a viable claim for relief. *See, e.g.*, *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."); *McElroy v. City of Lowell*, 741 F. Supp. 2d 349, 352 (D. Mass. 2010) (dismissal of § 1983 action because the complaint made general and conclusory statements that did not imply an unlawful act); *Pease v. Burns*, 719 F. Supp. 2d 143, 149 (D. Mass. 2010) (dismissal of plaintiffs' § 1983 complaint alleging violation of constitutional rights, including Fourth Amendment, that stated "all defendants" were involved in the acts without more specificity). As can be gleaned below, Penate's Complaint falls woefully short of these fundamental pleading requirements with regard to the alleged constitutional claim against Det. Lt. Irwin.

A police officer can be liable under the Fourteenth Amendment's Due Process Clause, pursuant to § 1983 for withholding exculpatory evidence. *See Brady v. Dill,* 187 F.3d 104,

114 (1st Cir.1999). However, while evidence that a police officer possessed exculpatory evidence and inadvertently or even negligently failed to produce it will support a *Brady* challenge to a criminal conviction, it will not sustain a valid § 1983 wrongful conviction claim. The Supreme Court, addressing the question of "when tortious conduct by state officials rises to the level of a constitutional tort" for purposes of an alleged due process violation, has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 665 (1986). "[T]he protections of the Due Process Clause, whether substantive or procedural are just not triggered by lack of due care." *Davidson v. Cannon,* 474 U.S. 344, 344, 106 S.Ct. 668, 669 (1986). In order to sustain his § 1983 wrongful conviction claim against Det. Lt. Irwin based on a failure to disclose exculpatory evidence, Penate must show that the exculpatory evidence was intentionally withheld and that the intentional withholding was "in bad faith or with either the intent to violate Plaintiff's constitutional rights or with deliberate indifference to those rights." *Reid v. Simmons,* 163 F.Supp.2d 81, 90 (D.N.H. 2001). aff'd, 47 Fed. Appx. 5 (1st Cir.2002) (per curiam), cert. denied, 540 U.S. 894, 124 S.Ct. 237 (2003).

Therefore, conclusive evidence that a *Brady* violation occurred is only one necessary element of a § 1983 action against the violator. On this point, this Court has recognized:

> *Brady* and its progeny do not hold that the failure to disclose exculpatory evidence *qua* failure to disclose exculpatory evidence is, in and of itself, a violation of one's constitutional rights. *Brady,* and its most notable progenies, *Giglio v. U.S.,* 405 U.S. 150 (1972) and *U.S. v. Agurs,* 427 U.S. 97 (1976) hold[], at most, that the failure of the prosecutor to disclose exculpatory evidence to the defense at trial amounts to a denial of a fair trial in violation of the due process clause.
> ...
> *Brady* and its progeny, bottomed on a defendant's due process right to a fair

trial, requires the *prosecutor* to disclose exculpatory evidence to the defense. It does *not* require *investigators* to disclose exculpatory evidence to the defense or a defendant. At best, it requires investigators to disclose—at some point—exculpatory evidence to the prosecutor.

...

A *Brady* violation that resulted in overturning of § 1983 plaintiff's conviction is a necessary, but not a sufficient, condition for § 1983 liability on the part of the police. It is a necessary condition because the *Brady* violation establishes the requisite threshold of constitutional injury (a conviction resulting in loss of liberty) below which no § 1983 action can lie. It is not a sufficient condition, however, because the *Brady* duty is a no fault duty and the concept of constitutional deprivation articulated in both *Daniels* [474 U.S. 327, 106 S.Ct. 662 (1986) ] and *Youngblood* [488 U.S. 51, 109 S.Ct. 333 (1988) ] *requires that the officer had intentionally withheld the evidence for the purpose of depriving the plaintiff of the use of that evidence during his criminal trial.* This is what is meant by "bad faith."[2]

*Burke v. Town of Walpole,* 2004 WL 507795, *25-26 (D. Mass.2004) (*quoting Jean v. Collins,* 221 F.3d 656, 663 (4th cir.2000), *cert. denied,* 531 U.S. 1076, 121 S.Ct. 771, 148 L.Ed.2d 671 (2001)), (emphasis added).

Granting every reasonable inference in Penate's favor, the facts as alleged fail to establish any intentional conduct by Det. Lt. Irwin sufficient to state the causal connection necessary for Penate's constitutional claim. The documents seized by Det. Lt. Irwin, Sgt. Ballou and Trooper Taylor were disclosed and produced to the AGO immediately after being discovered. Complaint ¶ 202. Just days later, Sgt. Ballou reviewed the seized evidence and discovered "dozens" of documents "related to Farak's treatment for drug addiction." He immediately brought these documents to the attention to both AAG Verner and AGG

---

[2] Although circuits differ as to what degree of culpability is necessary on the part of the officer withholding exculpatory evidence in order to establish § 1983 liability, either actual bad faith (*see Jean v. Collins,* 221 F.3d 656, 663 (4th Cir.2000); *Villasana v. Wilhoit,* 368 F.3d 976, 980 (8th Cir.2004); *Clemmons v. Armontrout,* 477 F.3d 962, 965-966 (8th Cir.2007)); or deliberate indifference to or reckless disregard for an accused's rights (*see Tennison v. City and County of San Francisco,* ---F.3d ---, 2009 WL 1758711, *9 (9th Cir.2009); *Steidl v. Fermon,* 494 F.3d 623, 631 (7th Cir.2007)), there is uniformity that the withholding must be knowing and cannot be supported by a showing of mere inadvertence or negligence. *Daniels,* 474 U.S. at 334; *Porter v. White,* 483 F.3d 1294, 1308 (11th Cir.2007), *cert. denied,* 128 S.Ct. 1259 (2008).

Kaczmarek. Id. ¶¶ 203-204.

The potential exculpatory nature of these documents did not become apparent until February 14, 2013, when Sgt. Ballou provided them to AGG Kaczmarek. Id. ¶¶ 220-221. Other than being "cc'ed" in the email entitled "Farak admissions," Penate alleges nothing to suggest that Det. Lt. Irwin ever reviewed or had specific knowledge of the content of the "admissions" or their potential impact on Pente's criminal case. Id. ¶¶ 220-224.

After disclosing the "Farak admissions" to AAG Kaczmarek, the responsibility of notifying the Hampden County DA's office of its potentially exculpatory nature fell to the AGO. To that end, on March 27, 2013, AAG Verner produced some of the documents brought to the attention of AAG Kaczmarek as admissions to "each of the Commonwealth's eleven District Attorneys" of the  Id. ¶ 232. Penate alleges that the exculpatory evidence pertinent to his criminal case was not included in this disclosure. He, however, fails to allege any facts that would remotely infer the Det. Lt. Irwin was involved in the decision to withhold those documents at that time or that he was even aware of the documents were being withheld. Id. ¶¶ 232-239. In fact, Penate specifically alleges that "[AAG] Kaczmarek decided the mental health worksheet should not be turned over to the District Attorneys or any defendants seeking relief based on Farak's misconduct." Id. ¶ 238.

By all indications, Det. Lt. Irwin did not learn of AAG Kaczmarek's alleged failure to disclose the "Farak admission" until August 22, 2013 when he was required to attend a meeting with AAG Verner, AAG Foster, AAG Ravitz and AAG Kaczmarek to discuss a subpoena that had been served on Sgt. Ballou some five months later. Id. ¶ 267. As it appears from the facts alleged by Penate, the discussion at this meeting centered around limiting the scope of Sgt. Ballou's subpoena because they constituted privileged medical treatment

documentation. Id. ¶¶ 266-274. While Penate alleges that "[AAG] Kaczmarek falsely claimed these documents were irrelevant to 'Farak defendants' ... and shouldn't be produced given the fact that several contained information concerning Farak's health/medical/psychological treatment," he alleges nothing that even remotely suggests that Det. Lt. Irwin knew the statement was false. Id.

A police officer has no duty to disclose exculpatory evidence "where [he] has reason to believe that the prosecutor is aware of that evidence." *Kelly v. Curtis,* 21 F.3d 1544, 1552 1994) (police officer had no duty to disclose report from the state crime lab where the lab generally sent a copy to the District Attorney); *Porter v. White,* 483 F.3d 1294, 1310 (11th Cir. 2007) (to establish the "affirmative causal connection" between Det. Lt. Irwin and the alleged constitutional violation in this regard, Penate would have to show both that Dt. Lt. Irwin withheld exculpatory evidence from the prosecution and that the prosecution did not obtain the evidence from anyone else); *McMillian v. Johnson,* 88 F.3d 1554, 1568 (11th Cir. 1996).

The exculpatory evidence in question was turned over to the AGO who then made the ultimate decision to withhold the evidence. Penate does not allege any specific facts that would provide an inference of the "affirmative link" between Det. Lt. Irwin's actions and the conduct of the AGO resulting in the non-disclosure required to state his claim. In sum, Plaintiff has simply not pled sufficient detail to indicate that Det. Lt. Irwin took any specific action that violated his constitutional rights and, therefore, the Complaint should be dismissed for its obvious pleading deficiencies under Rule 8(a). *See Iqbal*, 556 U.S. at 682-84.

### 2. Det. Lt. Irwin is Entitled to Qualified Immunity

Even if the allegations against Det. Lt. Irwin with regard to the alleged constitutional violations did not fail as a matter of law, Det. Lt. Irwin is entitled to qualified immunity as to those claims. Qualified immunity shields government officials who perform discretionary functions from civil liability so long as their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In conducting the inquiry, the Court must ask whether the right asserted by the plaintiff is recognized by the Constitution at the time of the alleged constitutional injury. *Savard v. Rhode Isl.,* 338 F.3d 23, 28 (1st Cir. 2003) (en banc), *cert. denied* 540 U.S. 1109(2004). The qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was "apparent" when undertaken. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

Here, the right asserted by Penate is the right to be provided with exculpatory evidence by Det. Lt. Irwin. Penate presses this right against Det. Lt. Irwin despite that all the allegations contained in the complaint demonstrates that the evidence was produced to the AGO who then allegedly made the decision to withhold it from the Hampden County DA. Det. Lt. Irwin submits that the law has not required action by an investigating officer in such circumstances, and no reasonable police officer would have understood otherwise. *See Brady, supra.* As such, Det. Lt. Irwin is entitled to qualified immunity on Penate's *Brady* claim.

### 3. Det. Lt. Actions as Pled by Penate Fails to State a Claim for Intentional Infliction of Emotional Distress.

Penate's claim of intentional infliction of emotional distress against Det. Lt. Irwin fails due to the failure to allege the requisite elements to state a claim under Massachusetts law. Penate has failed to state non-conclusory allegations (1) that Penate intended to inflict the

16

distress or knew that emotional distress would likely result from his conduct; (2) that the conduct was 'extreme and outrageous', 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community; (3) that the defendant' actions caused the distress; and (4) that the distress was 'severe' and of a nature that 'no reasonable man could be expected to endure it.' *Edsall v. Assumption College,* 367 F.Supp. at 80, *quoting Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976) and cases cited.

Liability for intentional infliction of emotional distress "cannot be predicated upon mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor is it even enough that the defendant has acted with an intent which is tortious or even criminal, ... rather [l]iability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Foley v. Polaroid Corp,* 400 Mass. 82, 99 (1987) (holding plaintiff acquitted of sexual assault had no cause of action where co-workers allegedly continually harassed, alternatively ignored, then taunted him); *see also, Casamasina v. Worcester Telegram and Gazette, Inc.,* 2 Mass. App. Ct. 801, 802 (1974) (where newspaper reported that Plaintiff "had a long history of involvement with drugs", it did not engage in extreme or outrageous conduct).

As fully set forth above, the Complaint fails to allege facts sufficient to establish a single element of this claim. To the extent police are merely carrying out their obligations as law enforcement officers, their conduct as a matter of law is not deemed extreme and outrageous. *Barbosa v. Conlon,* 962 F. Supp. 2d 316, 334 (D. Mass. 2013). See *Cruz-Erazo v. Rivera-Montanez* 212 F.3d 617,624 (1st Cir. 2000) (officer's verbal taunting of plaintiff with threats of assault and prosecution and such actions did not shock the conscious); *Pittsley v.*

17

*Warish* 927 F.2d 3, 7 (1st Cir. 1991) (recovery denied where officers threatened to kill plaintiff and told her children they would never see their father again if they caught him).

Det. Lt. Irwin does not dispute that a wrongful conviction would cause emotional distress. However, Det. Lt. Irwin's alleged conduct was not extreme or outrageous. Accordingly, Penate has failed to sufficiently allege facts supportive of his claim for intentional infliction of emotional distress. As such, this claim against Det. Lt. Irwin must be dismissed.

## V. CONCLUSION

For the reasons stated herein, Det. Lt. Irwin respectfully requests that Penate's claims against him be dismissed.

        Respectfully Submitted

        For Defendant Irwin,
        By his attorney,

        LAW OFFICES OF TIMOTHY M. BURKE

        */s/ Sheila E. McCravy*
        Timothy M. Burke
        BBO # 065720
        Sheila E. McCravy
        BBO # 628589
        160 Gould Street. Suite 100
        Needham, MA 02194
        (781) 455-0707
        attyTMB@aol.com
        smccravy@timburkelaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent this day to those participants indicated as non-registered participants.


Dated: December 18, 2017              _/s/ Sheila E. McCravy_
                                                   Sheila E. McCravy