UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROLANDO PENATE,<br><br>    Plaintiff,<br><br>v.<br><br>ANNE KACZMAREK, KRIS FOSTER,<br>RANDALL RAVITZ, JOSEPH BALLOU,<br>ROBERT IRWIN, RANDY THOMAS, SONJA<br>FARAK, SHARON SALEM, JAMES<br>HANCHETT, JULIE NASSIF, LINDA HAN,<br>ESTATE OF KEVIN BURNHAM,<br>STEVEN KENT, JOHN WADLEGGER, GREGG<br>BIGDA, EDWARD KALISH, and CITY OF<br>SPRINGFIELD,<br>    Defendants. | CIVIL ACTION NO. 3:17-cv-30119 |

## ANNE KACZMAREK'S MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT AND REQUEST FOR A HEARING

ANNE KACZMAREK

By her attorneys,

David H. Rich (BBO# 634275)
drich@toddweld.com
Maria T. Davis (BBO# 675447)
mdavis@toddweld.com
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Date:   January 29, 2018

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................*ii*

i.   Introduction............................................................................................................1

ii.  The Factual Allegations of the Complaint ............................................................2

iii. Argument ...............................................................................................................8

    I.   ALL COUNTS AGAINST ASSISTANT ATTORNEY GENERAL ANNE
       KACZMAREK MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6) ......8

       A.  Absolute Prosecutorial Immunity Bars Plaintiff's Claims Against
          Ms. Kaczmarek............................................................................................9

          1.  Ms. Kaczmarek Acted in a Prosecutorial Function in Reviewing
             Potentially Exculpatory Materials to be Turned Over to
             Prosecuting District Attorneys' Offices .......................................... 11

             a.  As a Matter of Law, Ms. Kaczmarek May Not Be Held Civilly
                 Liable for Failing to Produce Exculpatory Evidence During the
                 Course of Her Ongoing Prosecution of Sonya Farak.......................13

             b.  As a Matter of Law, Ms. Kaczmarek May Not Be Held Civilly
                 Liable for Responding to Court Orders and Subpoenas in the Penate
                 Prosecution ....................................................................................16

          2.  Absolute Immunity is Intended To Address Precisely the
             Circumstances At Issue Here......................................................18

             a.  There Are Other Means of Redress For a Line AG Prosecutor's
                 Alleged Intentional Withholding of Exculpatory Evidence....................19

             b.  A Line AG Prosecutor Would Be Subject to Repeated Litigation For
                 Allegedly Failing to Produce Exculpatory Evidence If Absolute Immunity
                 Were Not Allowed and Applied ............................................................19

iv.  Conclusion ...........................................................................................................20

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................8, 9, 16

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)...........................................................................................8, 9

*Brady v. Maryland,*
  373 U.S. 83 (1963)...............................................................................................15

*Broam v. Bogan,*
  320 F.3d 1023 (9th Cir. 2003) .............................................................................13

*Buckley v. Fitzsimmons,*
  509 U.S. 259 (1993)..........................................................................................9, 10

*Burns v. Reed,*
  500 U.S. 478 (1991).................................................................................11, 12, 19

*Cignetti v. Healy,*
  89 F. Supp. 2d 106 (D. Mass. 2000) ......................................................9, 11, 12, 17

*Crooker v. United States,*
  No. CIV.A. 08-10149-PBS, 2010 WL 3860597 (D. Mass. Sept. 29, 2010)....10, 15

*Imbler v. Pachtman,*
  424 U.S. 409 (1976)....................................................................................... *passim*

*Jones v. Shankland,*
  800 F.3d 77 (6th Cir. 1986) ............................................................................13, 15

*Kalina v. Fletcher,*
  522 U.S. 118 (1997)...............................................................................................18

*Knowlton v. Shaw,*
  704 F. 3d 1 (1st Cir. 2013).................................................................................11, 19

*Peay v. Ajello,*
  470 F.3d 65 (2nd Cir. 2006).....................................................................................13

*Reid v. State of New Hampshire,*
  56 F.3d 332 (1st Cir. 1995)........................................................................... *passim*

*Riley v. Colantuono,*

      No.CA 12-175 MML, 2013 WL 866734 (D.N.H. Feb. 5, 2013)......................10, 11

*Shmueli v. City of New York,*

      424 F.3d 231 (2d Cir. 2005)...................................................................................15

*Van de Kamp v. Goldstein,*

      555 U.S., at 335 (2009) ................................................................................ *passim*

*Warney v. Monroe Cnty,*

      587 F.3d 113 (2nd Cir. 2009)……………….…...…………………………....….13, 15

*Watterson v. Page,*

      987 F.2d 1 (1st Cir. 1993)........................................................................................3

*Yarris v. County of Delaware,*

      465 F.3d 129 (3d Cir. 2006).........................................................................13, 15

### i. Introduction

At all times relevant to this dispute, Anne Kaczmarek ("Ms. Kaczmarek") was an Assistant Attorney General who was actively prosecuting former Amherst Drug Lab chemist Defendant Sonja Farak ("Farak").  Plaintiff Rolando Penate ("Penate") claims that Ms. Kaczmarek violated his civil rights and intentionally inflicted emotional distress upon him by failing to produce certain exculpatory evidence she had obtained in the course of the Farak prosecution.[1]  Given the absolute immunity afforded to Ms. Kaczmarek for any alleged misconduct arising from discretionary acts and omissions undertaken in her capacity as a prosecutor, Penate's claims against her fail as a matter of law.

United States Supreme Court precedent and its progeny make clear that the protections of absolute immunity incorporate and apply to circumstances in which a prosecutor exercises her prosecutorial discretion to review and identify exculpatory evidence.  Imbler v. Pachtman, 424 U.S. 409, 430 (1976).   Indeed, Imbler made clear that even the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion." Id., at 431-32 n. 34.  Thus, if Sonya Farak were to have asserted claims identical to those being asserted by Penate, there is little doubt that Farak's claims would be subject to immediate dismissal based upon the prosecutorial immunity doctrine.

In apparent recognition of these clear and well-established legal principles, Penate seeks to set aside over forty years of Supreme Court precedent by attempting to somehow restrict or limit Ms. Kaczmarek's discretionary, prosecutorial functions and responsibilities to the Farak prosecution alone, and contends that those identical prosecutorial functions allegedly exercised by Ms. Kaczmarek in the derivative Penate matter should be ignored.  Penate's creative pleading

---

[1] It goes without saying that Ms. Kaczmarek strongly disputes the core facts underlying Penate's claims but recognizes that at this stage of the proceedings and for purposes of this motion, all of Plaintiff's allegations must be accepted as true.

at most establishes a distinction without a difference.  In fact, Penate's position flies in the face

of well-settled law that requires the Court to examine the actual function that Ms. Kaczmarek

allegedly performed in assessing her civil liability rather than relying upon labels,

characterizations and conclusions.   As discussed below, and at its core, Penate alleges that Ms.

Kaczmarek committed prosecutorial misconduct by withholding certain information she obtained

while acting in a prosecutorial capacity (that is, while exercising her prosecutorial function) and

that her prosecutorial role arguably compelled her to disclose.  As such, the claims against Ms.

Kaczmarek fail as a matter of law and must be dismissed.

### ii. The Factual Allegations of the Complaint

The allegations of the Complaint pertinent to Ms. Kaczmarek, which must be assumed as

true for purposes of the pending motion, are as follows:

Ms. Kaczmarek was employed as an Assistant Attorney General ("AAG") by the AGO

between 2005 and July 2014.  Complaint ¶2.  In January 2013, Ms. Kaczmarek was assigned to

prosecute Farak, ¶204, a former chemist for the Massachusetts Department of Mental Health

("DMH").  ¶8.  Farak had been a chemist with the DMH since in or around July 2003, and as of

at least 2004, worked in the Amherst Drug Lab.  ¶¶8, 82.  As an employee of the DMH, Farak

was responsible for the forensic analysis of suspected drug samples submitted by law

enforcement agencies.  ¶¶26-27.  Among the samples Farak was tasked with testing were drug

samples allegedly purchased from Penate by undercover police officers.  ¶135.  Farak tested the

Penate samples on December 22, 2011, January 6, 2012, and January 9, 2012, and determined

that the samples were positive for a controlled substance.  ¶¶142-43.  Grand jurors returned an

indictment against Penate in February 2012 after reviewing evidence including drug certificates

signed by Farak.  ¶¶160-62.

Unbeknownst to those she worked with, Farak was battling drug addiction almost the entire time she worked at the Amherst Drug Lab. ¶¶82, 138, 144. Approximately two years after testing Penate's drug samples, on January 18, 2013, Farak came under the suspicion of her superiors after two cocaine samples that had been assigned to Farak for testing went missing from the Amherst Drug Lab evidence room. ¶¶188-90. After finding sample case envelopes in Farak's storage locker, police approached Farak and questioned her concerning the missing drug samples. ¶¶191-95. That same day, police impounded and towed Farak's vehicle, and early the next day, obtained a search warrant allowing them to search the vehicle. ¶¶196-98.

Police searched Farak's vehicle early in the morning of January 19, 2013. ¶199. During the search, police seized approximately 300 pages of paper. ¶201. That paperwork included not only paperwork from the Amherst Drug Lab, but also mental health worksheets and a Diary Card that Farak had completed relating to treatment she had received from Service Net, a non-profit human services agency, in connection with her drug addiction. ¶¶144, 201. Farak had marked the Diary Card with the month and days that she had completed it, but not with the year. See Exhibit 1.[2] The Diary Card reflected Farak's struggles with drug addiction for approximately a one-week period, including drugs that she had used and her emotional state. ¶¶145-51. Police inventoried the paperwork they had recovered as "assorted lab paperwork" on the search warrant

---

[2] A redacted version of the first page of the Service Net Diary card is attached. As Plaintiff's allegations incorporate and rely upon materials not attached to the Complaint, Ms. Kaczmarek is entitled to rely upon and attach those documents in arguing for dismissal. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Watterson states that:

> [o]rdinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

Id., 987 F.2d at 3 (internal citations omitted). There can be no dispute that the Service Net Diary Card, the withholding of which is the basis of Plaintiff's claim, fits this criteria.

return, as well as in a subsequent police report. ¶¶210-11. Based on the evidence against her,

Farak was arraigned in Belchertown District Court on January 22, 2013. ¶212.

Ms. Kaczmarek began working on the Farak prosecution in January 2013. ¶¶204-07.

During the course of her prosecution, the Complaint alleges that Ms. Kaczmarek reviewed

evidence that had been collected concerning Farak's alleged crimes. ¶220. Among other things,

the Complaint alleges that Ms. Kaczmarek reviewed the Service Net Diary Card that Farak had

completed. ¶¶220-21. Ms. Kaczmarek addressed the Service Net Diary Card and other mental

health worksheets in a "Prosecution Memo" that she drafted and circulated to her supervisors.

¶¶234-35. In that memorandum, Ms. Kaczmarek reported that based on her review, while

"[c]ase law" suggested "the paperwork [was] not privileged[,]" she had not presented the mental

health records to the Farak grand jury "out of an abundance of caution." ¶235.

During the course of its prosecution, Ms. Kaczmarek and the AGO were charged with

determining what evidence in its possession amounted to exculpatory evidence, not only for

Farak, but also for the criminal defendants whose drug samples Farak had tested (the "Farak

Defendants"), including Penate. ¶232. The Complaint alleges that Ms. Kaczmarek "decided"

that while the mental health worksheets should be turned over to Farak, they need not be turned

over to District Attorneys or Farak Defendants. ¶¶238-39 (emphasis supplied).

While Kaczmarek pressed on with her prosecution of Farak, District Attorneys' offices

continued to prosecute the Farak Defendants. ¶242. On July 15, 2013, Penate filed a motion to

dismiss the drug charges against him, based on Farak's misconduct and based on the

government's failure to turn over exculpatory evidence. ¶242. The court entered an order both

reminding the Assistant District Attorney prosecuting Penate to seek exculpatory material from

other government entities, and requiring an evidentiary hearing concerning the scope of Farak's

misconduct and the impact that it had on Penate's case. ¶¶243-44. When that Assistant District Attorney sought additional exculpatory evidence from the AGO pursuant to the court's order, Kaczmarek and the AGO allegedly advised him that all relevant evidence had previously been turned over. ¶¶244-46.

Around that same time, Hamden County Superior Court Judge Kinder issued an order consolidating 14 post-conviction cases for an evidentiary hearing on September 9, 2013, focused on the timing and scope of Farak's misconduct. ¶247. The parties agreed to present Penate's pre-trial motion to dismiss at this same hearing. ¶262. Approximately two weeks before the hearing, on August 22, 2013, the Complaint alleges that Penate served Ms. Kaczmarek and Ballou, a police officer assigned to the AGO who had participated in the search of Farak's vehicle, with subpoenas to testify at the evidentiary hearing and to bring with them "[c]opies of any and all inter and intraoffice correspondence pertaining to the scope of evidence tampering and/or deficiencies at the Amherst Drug Laboratory from January 18, 2013 to the present." ¶¶5, 248-49. Subsequently, on August 30, 2013, Ballou received a subpoena *duces tecum* for the post-conviction hearing requesting "the production of all documents and photographs pertaining to the investigation of Sonja Farak and the Amherst Drug Lab." ¶263.

The Complaint alleges that the AGO assigned Assistant Attorney General Kris Foster to represent the AGO in the Superior Court proceedings and to respond to the subpoenas. ¶¶253, 265. The Complaint also alleges that Ms. Kaczmarek, who was still prosecuting Farak, communicated with her superiors in the AG's office concerning the evidence that she had analyzed in the ongoing Farak prosecution and their strategy in the judicial proceeding, ¶266, and later participated in meetings with Foster and her superiors concerning the AG's strategy in responding to the subpoena. ¶¶267-272. During those meetings, the Complaint alleges that Ms.

Kaczmarek revealed that she had copies of Farak's mental health worksheets, but that she did not believe that they were relevant to the Farak Defendants. ¶274. Following their strategy meetings, and allegedly without personally reviewing the materials herself, ¶288, AAG Foster filed a motion to quash the post-conviction subpoena to Ballou, or in the alternative, for a protective order "restrict[ing] the scope of the subpoena by not requiring the AGO to produce seven types of information, including 'emails responsive to the subpoena, but not already contained in the case file specifically listed therein' and 'information concerning the health or medical or psychological treatment of individuals.'" ¶276.

That same day, Penate filed a motion to compel the production of documents in the possession of third parties, including DPH and the AGO, including "any and all evidence suggesting that a third party may have been aware of Farak's evidence tampering at the Amherst Drug Laboratory prior to Farak's arrest;" evidence responsive to his August 22, 2013 subpoenas to Ms. Kaczmarek and Ballou; and Farak's personnel file. ¶¶278-79, 281, 283.

The already-scheduled court hearing took place on September 9, 2013. ¶287. During that hearing, the court denied the motion to quash Ballou's testimony, and Ballou proceeded to testify that day. ¶¶287, 292. Ballou allegedly testified during the hearing that he believed that everything in his Farak investigation file had already been turned over. ¶301. In response, the court instructed Foster to review Ballou's file and to submit copies of undisclosed documents for *in camera* review. ¶289.

According to the Complaint, Foster returned to the AGO, and reported on the hearing to Ms. Kaczmarek and her supervisors, including Ballou's testimony that his files had already been turned over. ¶301. The Complaint alleges that Ms. Kaczmarek reviewed what she determined to be Ballou's trial file for the Farak prosecution, and determined that nothing in Ballou's file

remained to be turned over.  ¶¶302-04.  Ms. Kaczmarek is alleged to have advised AAG Foster

that there was no need to produce additional materials, which AAG Foster reported to Judge

Kinder in a September 16, 2013 letter.  ¶305.

Also on September 16, 2013, Plaintiff's attorney sent an email to AAG Foster, requesting

to inspect the Farak evidence that had been seized from her car.  ¶309.  When forwarded the

email by Foster, Ms. Kaczmarek allegedly responded "[w]hy is this relevant to this case."  ¶311.

The Complaint alleges that, as a result of Ms. Kaczmarek's representation that the materials were

not relevant, Foster represented to Plaintiff's counsel that the evidence was not relevant to his

case.  ¶312.  As a result, on October 1, 2013, Plaintiff's counsel filed a motion to inspect the

evidence from the ongoing Farak prosecution.  ¶313.  The next day, the parties appeared in court

again for a hearing on various of Penate's discovery motions, including a motion to inspect

Farak's personnel file and the motion for the AGO's intra-office correspondence.  ¶¶321, 322-23,

327.  The court denied the motion to inspect Farak's personnel file.  ¶323.  Regarding Penate's

request for internal AGO communications, Foster allegedly reported that Kaczmarek had advised

her that there was no exculpatory materials and that the AG's communications constituted

protected work product.  ¶331-32.  Although the court initially allowed the motion to compel the

production of the AGO's intra-office communications, after reviewing a motion for clarification

filed by Foster, the court denied the motion.  ¶¶336-40.

Ultimately, the court denied Penate's motion to dismiss, allowed the Commonwealth's

motion in limine to prevent Penate from arguing that Farak's had engaged in misconduct during

the period of time that drugs associated with Penate were tested, and allowed Foster's motion to

quash subpoenas to Ms. Kaczmarek and Ballou.  ¶¶343-45, 347, 351.  These decisions are

alleged to have been based on Foster's representation that there was no evidence that Farak had

engaged in any misconduct in 2011 and 2012.  ¶347.  Penate's trial took place in December 2013, after which he was found guilty of a single count of Distributing a Class A substance on November 15, 2011.  ¶¶352, 376.

Throughout Penate's prosecution, Ms. Kaczmarek continued to prosecute Farak.  ¶382. Farak ultimately pled guilty to the charges against her on January 6, 2014.  ¶381.  Following the completion of her prosecution, Penate's counsel filed a motion to inspect evidence from Farak's prosecution, which the AGO did not oppose.  ¶382.  Penate's counsel located the partially-dated mental health records during his inspection.  ¶383.  Upon this finding, the Complaint alleges that the AGO sent copies of the documents seized from Farak's car to District Attorneys prosecuting the Farak Defendants, "pursuant to the AGO's **obligation to provide exculpatory information**." ¶385 (emphasis supplied).

### iii. Argument

I.    **ALL COUNTS AGAINST ASSISTANT ATTORNEY GENERAL ANNE KACZMAREK MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6).**

Under federal law, a complaint will be dismissed unless factual allegations in the complaint are "enough to raise a right to relief above the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is the plaintiff's burden "at the pleading stage [to make] allegations plausibly suggesting (not merely consistent with)" the right to relief. Id., 550 U.S. at 557.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Although factual allegations in the complaint must be taken as true, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

8

short of the line between possibility and plausibility of entitlement to relief,'" Iqbal, 556 U.S. at

678 (quoting Twombly, 550 U.S. at 557) and such a claim must be dismissed.  Further, it is well

established that legal conclusions are not entitled to the benefit of the rule that a court must

accept as true all of the allegations contained in a complaint.  Twombly, 550 U.S. at 564.

## A.  Absolute Prosecutorial Immunity Bars Plaintiff's Claims Against Ms. Kaczmarek

The Complaint makes clear that Plaintiff's claims against Ms. Kaczmarek are barred by

absolute prosecutorial immunity.  Prosecutorial immunity protects a prosecutor from civil

liability when she engages in activities that are "intimately associated with the judicial phase of

the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Reid v. State of

New Hampshire, 56 F.3d 332, 337 (1st Cir.1995).  The purpose of prosecutorial immunity is to

shield prosecutors from lawsuits that "could be expected with some frequency," Imbler, 424 U.S.

at 424-25; which "would divert prosecutors' attention and energy away from their important duty

of enforcing the criminal law", id. at 425; and which "would prevent the vigorous and fearless

performance of the prosecutor's duty that is essential to the proper functioning of the criminal

justice system[.]" Id. at 427-28.

Courts apply a "functional approach" in determining whether or not a prosecutor enjoys

absolute immunity from § 1983 liability, that is, "the availability of absolute immunity depends

upon the nature of the function being performed rather than the identity of the actor who

performed it." Cignetti v. Healy, 89 F. Supp. 2d 106, 113-14 (D. Mass. 2000) (citing Buckley v.

Fitzsimmons, 509 U.S. 259, 269 (1993)).  Under this functional approach, prosecutorial

immunity "protects those acts which are *closely associated with the judicial process* and which

are *performed in the course of the prosecutor's role as an advocate for the State*." Cignetti, 89

F. Supp. 2d at 113-14 (emphasis added, citing Imbler, 424 U.S. at 430); see also Van de Kamp v.

Goldstein, 555 U.S. 335, 340-43 (2009) (holding that prosecutorial immunity applies whenever the prosecutor's challenged conduct falls within the ambit of her function as an advocate for a governmental entity).

Since the applicability of absolute immunity is determined based on the function of a prosecutor, absolute immunity may apply to actions taken both inside and outside of the courtroom.  See Buckley, 509 U.S., at 272 (holding that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.")  Therefore, an action – inside or outside of the courtroom – will be accorded absolute immunity "[i]f the nature of the function requires *legal knowledge* and the *related exercise of discretion* in whether and how to use the material[.]"  Crooker v. United States, No. CIV.A. 08-10149-PBS, 2010 WL 3860597, at *9 (D. Mass. Sept. 29, 2010) (emphasis added, citing Van de Kamp v. Goldstein, 555 U.S. at 344).  This remains true even if some portion of a prosecutor's function is deemed administerial.  See, e.g., Van de Kamp, 555 U.S., at 344 (distinguishing administerial functions that require legal knowledge and discretion from "administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like."); Riley v. Colantuono, No. CA 12-175 MML, 2013 WL 866734, at *6 (D.N.H. Feb. 5, 2013), report and recommendation adopted in part, No. CA 12-175-ML, 2013 WL 866651 (D.N.H. Mar. 5, 2013) (holding that "where an administrative function requires legal knowledge and the exercise of related discretion, absolute immunity must follow").

Moreover, where a prosecutor is serving in a prosecutorial function, the prosecutor's *intent* in undertaking her responsibilities is immaterial, and absolute immunity will attach even where a prosecutor is alleged to have intentionally committed wrongdoing.  See Reid, 56 F.3d at

337 (holding that "[t]he further allegation that these prosecutors repeatedly misled the trial court in order to conceal their alleged misconduct does not defeat absolute immunity."); see also Burns v. Reed, 500 U.S. 478, 489-90 (1991) (holding that absolute prosecutorial immunity applied to prosecutors "making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses."); Riley, 2013 WL 866734, at *5 (holding that "[s]o long as a prosecutor serves in the role of advocate, absolute immunity applies without regard to how reprehensible the alleged conduct[.]").  Where the underlying activity at issue is covered by absolute immunity, a prosecutor is also shielded by absolute immunity for allegations that she conspired to commit that act.  Cignetti, 89 F. Supp. 2d at 117.

As the Supreme Court acknowledged in Imbler, "it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation[.]" Imbler, 424 U.S., at 428.  Further, as courts have recognized, prosecutors' intentional wrongdoing will not go unpunished, as there are readily available safeguards to protect against such actions – Boards of Bar Overseers, whose primary function it is to ensure that lawyers within their jurisdiction abide with their ethical obligations. See, e.g., id. at 428-29; Knowlton v. Shaw, 704 F.3d 1, 9 (1st Cir. 2013).

Here, all of Ms. Kaczmarek's alleged actions constitute the carrying out of heartland, discretionary prosecutorial functions, and thus are afforded absolute immunity.

1. **Ms. Kaczmarek Acted in a Prosecutorial Function in Reviewing Potentially Exculpatory Materials to be Turned Over to Prosecuting District Attorneys' Offices.**

Plaintiff alleges that Ms. Kaczmarek violated his Constitutional rights and inflicted emotional distress upon him in two ways: first, in allegedly failing to produce exculpatory

materials to District Attorneys prosecuting the Farak Defendants, and second, in allegedly failing to produce exculpatory materials, through AAG Foster, in response to subpoenas and court orders.  Ms. Kaczmarek's actions in both regards are entitled to absolute immunity.

Courts have repeatedly found that a prosecutor's analysis – and withholding – of exculpatory materials is protected by absolute immunity.[3]  See, e.g., Imbler, 424 U.S., at 430; Van de Kamp v. Goldstein, 555 U.S., at 342-43; Cignetti, 89 F. Supp. 2d, at 117.  The First Circuit examined this precise issue in Reid.  In Reid, the plaintiff alleged that the prosecutor defendants were not entitled to immunity after failing to turn over potentially exculpatory materials relating to the credibility of a key witness, first on their own, and then in response to multiple court orders.  56 F.3d at 333-34.  The plaintiff argued that absolute immunity should not apply because, among other things, after the court had ordered the materials to be produced, the prosecutors' discretion in rendering the disclosure was displaced, making the act of production ministerial in nature.  Id. at 336.  The First Circuit disagreed.

The First Circuit concluded that, under Imbler, "it is now *a well-settled rule* that a prosecutor *cannot* be held personally liable for the *knowing* suppression of exculpatory information."  Id. at 336-37 (emphasis added and internal quotations omitted, compiling case law from numerous jurisdictions).  The First Circuit determined that absolute immunity did in fact apply, both where a prosecutor failed to disclose exculpatory evidence *sua sponte*, and also where a prosecutor failed to disclose exculpatory evidence pursuant to court orders.  See id.  The First Circuit reasoned that even where a court order existed, a prosecutor was required to exercise his prosecutorial discretion to assess the court's disclosure order and to assess what

---

[3] The Supreme Court in Burns addressed a three-factor test to apply in determining whether to extend absolute immunity to cover a previously unexamined prosecutorial act (in that case, a prosecutor's providing legal advice to the police). Burns, 500 U.S.S at 484-86. The three-factor test need not be applied here, since courts have held, time and again, that a prosecutor's suppression of exculpatory materials is a prosecutorial function, entitled to absolute immunity.

evidence was subject to disclosure pursuant to that order. See id. at 337. Moreover, the Court held that absolute immunity continued to apply where a prosecutor misled the trial court about his failure to disclose exculpatory materials in order to conceal his failure to comply with the order. See id. The Reid court is only one of numerous appellate courts confirming the core holding that the suppression of exculpatory evidence is protected by absolute immunity. See, e.g., Imbler, 424 U.S. at 430; Van de Kamp, 555 U.S. at 342-43; Yarris v. County of Delaware, 465 F.3d 129, 137 (3d Cir. 2006); Peay v. Ajello, 470 F.3d 65, 67-68 (2nd Cir. 2006); Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003); Warney v. Monroe Cnty, 587 F.3d 113, 125 (2d Cir. 2009); Jones v. Shankland, 800 F.3d 77, 80 (6th Cir. 1986).

Thus, Plaintiff's allegation that Ms. Kaczmarek violated his constitutional rights by failing to turn over exculpatory materials during the course of her prosecution of Farak, and by failing to turn over those very same materials in response to his subpoenas and court orders issued in the Penate prosecution both fail as a matter of law. Ms. Kaczmarek's actions in both regards constitute her actively engaging and carrying out prosecutorial functions that are protected by absolute immunity.

### a. *As a Matter of Law, Ms. Kaczmarek May Not Be Held Civilly Liable for Failing to Produce Exculpatory Evidence During the Course of Her Ongoing Prosecution of Sonya Farak.*

As the government organization prosecuting Farak, the Complaint alleges that it was the responsibility of the AGO and Ms. Kaczmarek to review evidence in their possession to determine whether any such evidence was exculpatory, not only to Farak but also to the Farak Defendants. ¶¶431-32. Based on the review of the evidence in her possession, Ms. Kaczmarek is alleged to have determined that the evidence, which based on her legal knowledge might amount to protected health information, was not necessary for her own prosecution of Farak.

13

Complaint ¶235.  Ms. Kaczmarek produced the mental health records to Farak's attorney, and, as Plaintiff alleges, advised Farak's attorney that she considered the documents to be privileged. ¶239.

While the Complaint seeks to attribute conclusory and irrelevant mal-intent to Ms. Kaczmarek, the facts alleged in the Complaint concede that Ms. Kaczmarek was proceeding through the very deliberative process which is expressly protected by prosecutorial immunity. See e.g., ¶311 (Kaczmarek email to Foster asking about the health records "[w]hy is this evidence relevant to his case?").  Indeed, Penate expressly confirmed Ms. Kaczmarek's application of her judgment and discretion in alleging that "KACZMAREK **decided** the mental health worksheets should not be turned over to the District Attorneys or any defendants seeking relief based on FARAK's misconduct."  ¶238 (emphasis supplied).  Shortly thereafter, Penate alleges that "KACZMAREK falsely claimed that these documents were **irrelevant** to 'Farak Defendants' like Plaintiff and should not be produced given the fact that several contained information concerning FARAK's health/medical/psychological treatment."  ¶274 (emphasis supplied).

As the law of this and other jurisdictions makes clear, Ms. Kaczmarek's evaluation of the Farak evidence, and subsequent analysis as to whether that evidence amounted to exculpatory evidence in the derivative prosecutions of the Farak Defendants, is protected by absolute immunity.  The evaluative process of producing exculpatory materials required Ms. Kaczmarek to understand her obligations as a prosecutor, to apply her knowledge of the law in identifying potentially exculpatory materials, and to exercise her discretion in deciding which materials to turn over.

Penate is not saved by alleging that Ms. Kaczmarek failed to apply any discretion at all in the exercise of her duties or even that she acted maliciously and intentionally in withholding exculpatory evidence. Indeed, whether Ms. Kaczmarek is alleged to have intentionally withheld evidence or simply failed to exercise any discretion is legally irrelevant. Case law makes clear that it is the discretionary *function* of the prosecutor – here, producing or withholding exculpatory evidence – that is protected, and the particular prosecutor's state of mind in performing that function has no bearing on the analysis. See, e.g., Crooker, 2010 WL 3860597, at *9 (noting that absolute immunity has applied, among other times, when prosecutors have knowing used false testimony, deliberately suppressed exculpatory evidence at trial, simply failed to turn over exculpatory evidence, and failed to investigate adequately prior to filing charges); Imbler, 424 U.S. at 431–32 n. 34 (explaining that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); Reid, 56 F.3d at 333-34; Yarris, 465 F.3d at 137 ("the deliberate withholding of exculpatory information is included within the legitimate exercise of prosecutorial discretion"); Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) ("a prosecutor is entitled to absolute immunity even in the face of allegations of deliberate withholding of exculpatory information); Warney, 587 F.3d at 125 ("[I]f the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); but they would be absolutely immune from personal liability"); Jones, 800 F.2d at 80 (noting that a prosecutor's "non-disclosure of exculpatory information [is] certainly entitled to absolute immunity").[4]   Therefore,

---

[4] Requiring an analysis of the prosecutor's subjective state of mind in performing a prosecutorial function would allow a plaintiff to artfully plead around immunities simply by alleging that the prosecutor acted intentionally or failed to exercise appropriate attention in performing what is objectively a discretionary legal function. This would undermine the absolute immunity doctrine in its entirety.

even if her analysis was flawed, misguided or even malicious, Penate's acknowledgement that

Ms. Kaczmarek's actions required her to "decide," she necessarily exercised her discretionary

function as a prosecutor and immunity applies.

### b. *As a Matter of Law, Ms. Kaczmarek May Not Be Held Civilly Liable for Responding to Court Orders and Subpoenas in the Penate Prosecution.*

Nor may Ms. Kaczmarek be held civilly liable for her responses to Plaintiffs' subpoenas

and motions to compel in the Penate prosecution. Indeed, and as noted above, the legal analysis

is no different whether Ms. Kaczmarek allegedly failed to turn over exculpatory materials during

the course of the Farak prosecution or by allegedly failing to comply with a court order in the

Penate prosecution. Reid, 56 F.3d at 337. In apparent recognition of the weakness of his

position, Penate attempts to "plead around" the legal deficiency by suggesting that Ms.

Kaczmarek served "only" as a third party witness in the Penate prosecution, no different than any

other witness called upon to produce documents. ¶436.[5] Therefore, the argument goes,

prosecutorial immunity cannot apply. Penate's position does not withstand scrutiny.

Ms. Kaczmarek's involvement in the Penate prosecution was not that of an ordinary third

party. Her involvement in the Penate prosecution flowed solely and exclusively from her active

and ongoing role as the Farak prosecutor and the perceived attendant obligations she had to

Farak and, derivatively, to the Farak Defendants as a result of the Farak prosecution. Indeed, the

documents Penate subpoenaed and sought through motion practice were *precisely* the same

documents that Plaintiff alleges Ms. Kaczmarek was under a *sua sponte* duty to turn over as

exculpatory materials. The core issue then in assessing Ms. Kaczmarek's disclosure obligations

---

[5] This conclusory allegation –made only once in the 464-paragraph Complaint – is not entitled to any weight. See Complaint ¶436. It is beyond dispute that a court will not consider allegations in a Complaint that amount to mere labels and conclusions, see Iqbal, 556 U.S. 662 at 678, and Plaintiff's claim that Ms. Kaczmarek's actions in assessing and withholding potentially exculpatory materials were ministerial do not make them so. Such a label should particularly be disregarded here, where adopting it would require the court to ignore decades worth of controlling case law to the contrary.

16

remains <u>whether Ms. Kaczmarek improperly withheld exculpatory materials from Penate which sprung from her role as Farak's prosecutor</u>.  Again, and as courts have ruled time and time again, this function is a prosecutorial function, and is absolutely immune from civil liability.  To allow Penate to pursue claims against Ms. Kaczmarek here would allow him to end-run around decades of controlling precedent to the contrary, and would essentially allow a plaintiff to artfully plead around immunities that the Supreme Court has already held are necessary to the proper functioning of the criminal justice system, including the role of the prosecutor in that system.

Further, to the extent that Plaintiff alleges that Ms. Kaczmarek's actions became ministerial as a result of the various subpoenas, motions and court orders issued relating to the exculpatory materials, the First Circuit has made clear that this is not so.  As the First Circuit recognized in <u>Reid</u>, despite various documents setting forth Ms. Kaczmarek's production obligations, Ms. Kaczmarek was allegedly required to review the Farak evidence and to determine whether or not the materials constituted exculpatory evidence.  <u>Reid</u>, 56 F.3d at 337.  Again, and accepting these allegations as true, Ms. Kaczmarek was compelled to classically exercise her discretion, based on her analysis and experience.  As a result, the conduct is prosecutorial in nature.  See <u>Van de Kamp</u>, 555 U.S., at 344.

Second, to the extent that Penate alleges that Ms. Kaczmarek is civilly liable for her role in advising Foster how to respond to various subpoenas and court orders during the Penate prosecution, Ms. Kaczmarek is immune from liability for these actions as well.  Well-established case law makes clear that a prosecutor is absolutely immune from liability not only for actions undertaken in the prosecution of a defendant, but also for acts that are "*closely associated with the judicial process*" and that are "*performed in the course of the prosecutor's role as an advocate for the State*."  <u>Cignetti</u>, 89 F. Supp. 2d at 113-14 (emphasis added).  There can be no

17

real debate that moving to quash the subpoenas to the AGO and its employees, opposing motions

to compel relating to an ongoing prosecution, and arguing in court amount to activities that are

closely associated with the judicial process – all amount to advocacy on behalf of the state.

Moreover, the fact that Foster and not Ms. Kaczmarek prepared the AGO's motion papers

and appeared in court makes no difference.  To the extent that the Complaint alleges that Ms.

Kaczmarek was involved in Foster's litigation position and representations to the court (and thus

is liable for those positions and representations), the Supreme Court has made clear that Ms.

Kaczmarek is immune from liability for those actions.  As the Van de Kamp Court explained:

> Decisions about indictment or trial prosecution will often involve
> more than one prosecutor within an office. We do not see how
> such differences in the pattern of liability among a group of
> prosecutors in a single office could alleviate Imbler's basic fear,
> namely, that the threat of damages liability would affect the way in
> which prosecutors carried out their basic court-related tasks.
> Moreover, this Court has pointed out that 'it is the interest in
> protecting the proper functioning of the office, rather than the
> interest in protecting its occupant, that is of primary importance.'

Id. at 345 (quoting Kalina v. Fletcher, 522 U.S. 118, 125 (1997).  As a result, Ms. Kaczmarek

may not be held civilly for any role she is alleged to have had in Foster's advocacy concerning

Plaintiff's subpoenas.[6]

## 2. Absolute Immunity is Intended To Address Precisely the Circumstances At Issue Here

The public policy concerns underlying the doctrine of absolute immunity fully support a

finding of immunity here.  In particular, absolute immunity has been held to be appropriate

where other means exist to redress prosecutorial misconduct and also in instances where a

---

[6] For the sake of efficiency, Ms. Kaczmarek will not repeat arguments made in support of Foster's motion to dismiss the Complaint, and instead, to the extent they are relevant, refers to and incorporates the arguments made in Foster's motion to dismiss (and her reply brief) concerning the applicability of prosecutorial immunity here.

prosecutor would be exposed to repeated lawsuits in the absence of immunity.  Both of these factors confirm that absolute immunity is appropriate here.[7]

### a.   *There Are Other Means of Redress For a Line AG Prosecutor's Alleged Intentional Withholding of Exculpatory Evidence.*

Absolute immunity is appropriate where a prosecutor may be subject to redress for actions in bad faith outside of legal liability.  Courts have routinely held that the availability of state disciplinary proceedings amounts to sufficient redress for alleged bad faith withholding of exculpatory materials.  See Imbler, 424 U.S. at 428-29; Knowlton, 704 F.3d, at 1.  Given that Ms. Kaczmarek's liability is alleged to be based on her withholding of exculpatory evidence, and state disciplinary proceedings are available to remedy any alleged prosecutorial misconduct,[8] this factor also confirms that a finding of absolute immunity is appropriate here.

### b.   *A Line AG Prosecutor Would Be Subject to Repeated Litigation For Allegedly Failing to Produce Exculpatory Evidence If Absolute Immunity Were Not Allowed and Applied.*

Significantly, the purpose of absolute immunity is in large part to ensure that the threats of lawsuits do not undermine the performance of prosecutors, because "[t]he public trust of the prosecutor's office would suffer if [a prosecutor] were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." Imbler, 424 U.S. at 424-25.  As the Supreme Court went on to recognize, "[s]uch suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." Id. at 425.  On the contrary, a prosecutor's non-prosecutorial functions are less open and therefore are less likely to

---

[7] While the three-factor test articulated in Burns does not apply here, where courts have already determined that a prosecutor's suppression of exculpatory materials is absolutely immune from suit, the public policy factors of the three-factor test remain useful in confirming that Ms. Kaczmarek's alleged actions are entitled to absolute immunity.

[8] Of course, Ms. Kaczmarek is not contending that state disciplinary remedies would be appropriate but only that such remedies are available should they be properly commenced.

lead to litigation, justifying only qualified immunity.  See Burns, 500 U.S. at 494 (holding that a prosecutor's giving legal advice to police officers is not a prosecutorial function afforded absolute immunity, and recognizing that "a suspect or defendant is not likely to be as aware of a prosecutor's role in giving advice as a prosecutor's role in initiating and conducting a prosecution.").

Here, any prosecutor (such as Ms. Kaczmarek) charged with prosecuting a drug lab chemist would be subject to lawsuits by the thousands of criminal defendants potentially affected by the chemist's actions, to whom the AG had an obligation to produce exculpatory materials. Indeed, the Complaint alleges that on average, each chemist at the Amherst Drug Lab tested 2,052 samples in 2011 alone.  ¶106. As alleged in the Complaint, Ms. Kaczmarek had an obligation to turn exculpatory materials over to each one of the thousands of Farak Defendants. ¶434.  Exposing a prosecutor to civil liability under such circumstances, particularly given the high visibility of the prosecutor in such cases, would therefore necessarily impact how the AG would perform her function (if not compel her to resist participating in any such prosecution at all).  This in turn would undermine the prosecutor's role as an advocate for the Commonwealth in this very significant area and further supports the policy reasoning behind absolute immunity.

### iv. Conclusion

For the foregoing reasons, Anne Kaczmarek respectfully requests that the Court dismiss with prejudice Counts IV and VIII of the Complaint as against Ms. Kaczmarek on the grounds that she is immune from suit based upon the prosecutorial immunity bar.

Respectfully Submitted,

ANNE KACZMAREK

By her attorneys,


___/s/ David H. Rich___
David H. Rich (BBO# 634275)
drich@toddweld.com
Maria T. Davis (BBO# 675447)
mdavis@toddweld.com
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Date:  January 29, 2018


## CERTIFICATE OF SERVICE

I, Maria T. Davis, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 29, 2018.

___/s/ Maria T. Davis___
Maria T. Davis