UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROLANDO PENATE, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 3:17-cv-30119 |
| ANNE KACZMAREK, KRIS FOSTER, RANDALL RAVITZ, JOSEPH BALLOU, ROBERT IRWIN, RANDY THOMAS, SONJA FARAK, SHARON SALEM, JAMES HANCHETT, JULIE NASSIF, LINDA HAN, ESTATE OF KEVIN BURNHAM, STEVEN KENT, JOHN WADLEGGER, GREGG BIGDA, EDWARD KALISH, and CITY OF SPRINGFIELD, Defendants. | **Leave Granted to File Reply on February 27, 2018** |

## ANNE KACZMAREK'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION TO DISMISS

### i. Introduction

Stripped of its bombast, Plaintiff Rolando Penate's ("Penate") Opposition admits and reconfirms that his claims against Anne Kaczmarek ("Ms. Kaczmarek") are based on Ms. Kaczmarek's exercise of her discretion in analyzing potentially exculpatory evidence and failing to turn that evidence over pursuant to her prosecutorial, Brady obligations. Although Plaintiff claims that Ms. Kaczmarek's actions cannot be protected because, as the Complaint alleges, her Brady obligations stemmed from her role as the prosecutor of Sonja Farak ("Farak"), as opposed to the prosecutor of Penate, Plaintiff's Opposition does not offer a shred of legal support for this proposed distinction. Indeed, were such a distinction to be made, it would fly in the face of the oft-repeated rule that in assessing prosecutorial immunity, a court must assess the *function* that the prosecutor performs, and not the title of the individual performing the function.

Here, the Complaint alleges that as a prosecutor, Ms. Kaczmarek had an obligation to review potentially exculpatory evidence and exercise her discretion to determine not only whether the evidence needed to be turned over to Farak, but, by virtue of her role as Farak's prosecutor and the nature of that prosecution, also to the criminal defendants whose cases may have been impacted by Farak's actions. Such actions are at the heart of a prosecutor's function, and are entitled to absolute immunity.

### ii. Argument

**A. The Court Must Assess Ms. Kaczmarek's Function In Assessing Exculpatory Evidence for Production and Not The Conclusory Title Given To Her By Plaintiff**

The main thrust of Plaintiff's argument is that while Ms. Kaczmarek would be entitled to absolute immunity for withholding exculpatory evidence from Farak, she is not entitled to absolute immunity for allegedly withholding that same exculpatory evidence from the Farak Defendants. There is no support for this contention.

First, this proposed distinction is based solely on the label they have chosen to thrust upon Ms. Kaczmarek, a factor courts have repeatedly held is not determinative in assessing whether absolute immunity exists. Instead, as courts have confirmed time and time again, this Court must look at the function of the subject actions to determine whether the actions are "*closely associated with the judicial process* and . . . are *performed in the course of the prosecutor's role as an advocate for the State*." Cignetti v. Healy, 89 F. Supp. 2d 106, 113-14 (D. Mass. 2000) (holding that "the availability of absolute immunity depends upon the nature of the function being performed rather than the identity of the actor who performed it.").

Here, Plaintiff's claims allege that Ms. Kaczmarek was obligated to collect evidence from police, apply her legal knowledge to assess that evidence, and use her discretion to determine whether the evidence amounted to exculpatory evidence to both Farak and to the Farak

2

Defendants. Accepting such allegations as true, and based on the nature of the active and ongoing Farak prosecution, Ms. Kaczmarek's obligations were inescapably interwoven with the judicial process, with regard to both her own prosecution of Farak and the derivative prosecutions of the Farak Defendants. Further, Ms. Kaczmarek's alleged obligation to produce evidence to the Farak Defendants was an obligation that she had *solely* due as a result of her role in prosecuting Farak. Indeed, without the Farak prosecution, Ms. Kaczmarek would not have possessed the materials she is alleged to have withheld. In analyzing the materials to determine whether they were exculpatory to the Farak Defendants, Ms. Kaczmarek was required to both apply her legal knowledge and to use her discretion in determining what to turn over during the course of the prosecutions. These are hallmark attributes of the prosecutorial functions. See e.g. Crooker v. United States, No. CIV.A. 08-10149-PBS, 2010 WL 3860597, at *9 (D. Mass. Sept. 29, 2010).

Second, not only does case law support a finding of absolute immunity here, but Plaintiff offers no support for his blanket assertion that absolute immunity cannot apply because Ms. Kaczmarek was acting as Farak's prosecutor but not as Penate's prosecutor. Penate cites a series of cases that he argues support his position. Upon examination, however, none supports Plaintiff's conclusion:

- Filler v. Kellett, 859 F.3d 148, 154 (1st Cir. 2017) addressed a situation where a prosecutor allegedly advised a police officer to refuse to turn over documents in a civil divorce proceeding. Neither the prosecutor nor any other government entity had any involvement in the wholly civil divorce proceeding and the civil divorce had no relationship to any criminal prosecution. The court held that the prosecutor's advice to the police concerning whether to produce documents in the private civil matter was not entitled to absolute immunity.

- Mikko v. City of Atlanta, 857 F.3d 1136, 1141 (11th Cir. 2017) addressed a situation where a criminal defendant in Florida sued prosecutors in Georgia who prohibited his expert witness from testifying in his criminal case. The Georgia prosecutors had learned that an Atlanta, Georgia crime lab director, who had a

3

contractual right to provide private expert testimony, was to provide an expert opinion for the defendant. The prosecutors in Georgia prohibited the expert from testifying because doing so would "not look good". The prosecutors had no involvement whatsoever in the Florida criminal case, and absolute immunity was held not to apply to what the court determined was the prosecutors' administrative actions, which themselves were divorced from any prosecutorial activities.

- Lamptom v. Diaz, 639 F.3d 223, 228-29 (5th Cir. 2011) concerned a §1983 action brought by a judge against a federal prosecutor who, <u>after the criminal prosecution was over</u>, provided the plaintiff's federal tax returns to a state ethics commission in violation of federal tax laws. The court held that the purposes of immunity -- ensuring that prosecutors were able to exercise independent judgment during the course of their representation of the state and lessening the burden of litigation on prosecutors -- was absent here, particularly where the prosecution <u>had already ended</u>.

- Spurlock v. Thompson, 330 F.3d 791, 798-99 (6th Cir. 2003) concerned a prosecutor's involvement in an administrative investigation that took place <u>after the criminal trial had concluded</u>. The prosecutor was acting in an administrative/investigatory role, which had no relationship to any ongoing criminal prosecution, and therefore was not entitled to absolute immunity.

- McSurely v. McLellan, 697 F.2d 309, 318-19 (D.C. Cir. 1982) involved a §1983 lawsuit alleging that a prosecutor had participated in a public meeting for the purpose of preventing plaintiffs from speaking in the meeting, that he had prepared arrest and search warrants in bad faith, that he had <u>participated in a raid on the plaintiff's home</u> and took materials that went far beyond the warrant, and that he conspired with representatives of a Senate subcommittee to transfer documents to them that had been illegally seized. The court held that the actions complained of were not prosecutorial in nature, and instead were administrative or investigatory, and therefore not subject to absolute immunity.

- Marten v. Swain, 242 F. Supp. 3d 744, 756-57 (S.D. Ind. 2017) addressed a lawsuit filed against Swain, the chief counsel for the tax litigation division of the Indiana AG's office. Swain <u>investigated</u> the plaintiffs for alleged tax fraud, deposed the plaintiffs during the course of his investigation, and served as a witness in a criminal prosecution against the plaintiffs. The court held that these actions were taken during the course of the AG's investigation and amounted to the actions of an investigator and witness, and not a prosecutor.

In short, none of these cases have any bearing on the situation here -- where a prosecutor, in the midst of her criminal prosecution, is alleged to have had a duty to produce exculpatory materials to various criminal defendants in a derivative criminal prosecution. As discussed

4

below, the Plaintiff's Complaint does not come close to alleging facts sufficient to demonstrate that Ms. Kacsmarek was acting in a law enforcement capacity or in an administrative capacity. Indeed, the allegations of the Complaint demonstrate just the opposite.

### B. Ms. Kaczmarek Was Not Acting In A Law Enforcement Capacity

In the face of case law making clear that Ms. Kaczmarek was not acting in an administrative function, Plaintiff adds a new wrinkle, arguing (in conclusory fashion) that in addition to functioning as an administrator, Ms. Kaczmarek acted in a law enforcement capacity. In so doing, Plaintiff relies on cases setting forth the general proposition that law enforcement agencies have an obligation to turn favorable evidence over to the prosecutor. While there can be no serious debate in this regard, the Plaintiff's argument that Ms. Kaczmarek was acting in a law enforcement capacity finds no support in the law and ignores the allegations of his own Complaint.

Significantly, in arguing that Ms. Kaczmarek functioned in a law enforcement capacity, Plaintiff disregards the authority he cites. This legal authority expressly distinguishes between (i) law enforcement's role in turning evidence over to prosecutors, and (ii) a prosecutors' role in assessing, weighing and determining whether such evidence is in fact exculpatory and should disclosed. See, e.g., Brady v. Dill, 187 F.3d 104, 114 (1st Cir. 1999). Here, the Complaint alleges that the police did in fact turn evidence over to Ms. Kaczmarek. Complaint ¶¶302-04. As Farak's prosecutor, the Complaint goes on to allege that Ms. Kaczmarek had an obligation to review the evidence, to ***recognize it as exculpatory evidence not only with regard to Farak but also to the Farak Defendants***, and to turn that evidence over to DAs prosecuting the Farak Defendants. Id. ¶¶385, 434. The Complaint further alleges that Ms. Kaczmarek had a Brady obligation to turn the very same materials over directly to Penate as a result of the subpoenas that

5

he served upon her.  Id. ¶¶278-79, 281, 283.  These allegations reflect the opposite of a police function and are heartland prosecutorial functions.  In fact, these allegations reflect the very same prosecutorial functions that courts have regularly and repeatedly held are entitled to absolute immunity -- functions that require both the application of legal knowledge and discretion to determine which evidence should be turned over in ongoing criminal prosecutions.

C. **Ms. Kaczmarek Has Not Requested An Extension Of The Doctrine Of Absolute Immunity, Since It Is Already Well-Established That Absolute Immunity Applies**

Lastly, Plaintiff claims that Ms. Kaczmarek seeks to extend the absolute immunity doctrine based on public policy considerations.  This is simply incorrect.  As Ms. Kaczmarek's initial Memorandum makes clear, she refers to public policy considerations not to extend the doctrine of absolute immunity, but rather to confirm that its application here – which has been confirmed by courts again and again – remains appropriate.

The Supreme Court set forth a three-factor test in Burns v. Reed in determining whether the absolute immunity doctrine should be extended to cover a new prosecutorial function.  500 U.S. 478, 484-86 (1991).  According to Burns, in determining whether to extend the doctrine, the court is to examine: (1) whether there was common law support for extending absolute immunity to cover a specific prosecutorial function; (2) whether there is a risk of vexatious litigation if the immunity is not extended; and (3) whether there are checks other than civil litigation to prevent abuses of authority by prosecutors.  See id. at 492-96.  Of course, this analysis is unnecessary here where courts, including the United States Supreme Court, have recognized that the alleged suppression of evidence by a prosecutor is protected by absolute immunity.  Imbler v. Pachtman, 424 U.S. 409, 430 (1976); Van de Kamp v. Goldstein, 555 U.S. 335, 342-43 (2009).

However, to the extent that this Court wishes to apply the Burns analysis to the particular facts of this case, the result is the same.  First, it is beyond debate that courts have already found

6

that there is common law support for finding absolute immunity in the case of allegedly failing to produce exculpatory materials. See, e.g., Reid v. New Hampshire, 56 F.3d 332, 336-37 (1st Cir. 1995); Campbell v. Maine, 787 F.2d 776, 778 (1st Cir. 1986); Goodwin v. Jones, 2016 WL 3581998, *2 (D. Mass. June 27, 2016); Aldrich v. Cambridge, 2012 WL 6622495, *8 (D. Mass. Dec. 18, 2012); Almeida v. Fall River, 2012 WL 3548063, *7 (D. Mass. Aug. 13, 2012); Cignetti v. Healey, 89 F. Supp. 2d 106, 117 (D. Mass. 2000). Second, given the numerous Farak Defendants to whom the Complaint alleges that Ms. Kaczmarek had an obligation to produce Brady materials, she is at risk of vexatious litigation if absolute immunity does not apply. See Memo, at pp. 19-20. Third, alternative remedies exist to address the alleged prosecutorial misconduct alleged in the Complaint. See id., at p. 19. Through this framework, it is clear that Ms. Kaczmarek does not seek to expand the absolute immunity doctrine. Indeed, it is Penate who requests that this Court create a new exception to the absolute immunity bar and disturb decades of well-established legal authority in this area.

### iii. Conclusion

For the foregoing reasons and for the reasons set forth in her Memorandum in Support of her Motion to Dismiss, Anne Kaczmarek respectfully requests that the Court dismiss with prejudice Counts IV and VIII of the Complaint as against Ms. Kaczmarek on the grounds that she is immune from suit based upon the absolute prosecutorial immunity bar.

Respectfully Submitted,

ANNE KACZMAREK

By her attorneys,

  /s/ David H. Rich
David H. Rich (BBO# 634275)
drich@toddweld.com
Maria T. Davis (BBO# 675447)
mdavis@toddweld.com
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Date: February 27, 2018

## **CERTIFICATE OF SERVICE**

I, David H. Rich, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 27, 2018.

  /s/ David H. Rich
David H. Rich