UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rolando Penate ) | |
|     Plaintiff ) | |
| ) | |
| ) | CA No.:3:17-cv-30119-KAR |
| v. ) | |
| ) | |
| Anne Kaczmarek et al. ) | |
|     Defendants ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT, SONJA FARAK'S MOTION TO DISMISS

### I. INTRODUCTION

The plaintiff's complaint, consisting of 56 pages and 464 paragraphs, alleges "multiple overlapping conspiracies to suppress highly exculpatory evidence." The "factual allegations" begin in the 1960's and end in June of 2017. (Complaint, ¶¶ 23, 397). The plaintiff, Rolando Penate ("Penate"), was a criminal defendant in a proceeding in Hampden Superior Court. The defendant Sonja Farak ("Farak") was the chemist who tested the heroin that Penate was ultimately convicted of selling. Farak was a drug addict who fed her addiction by taking drugs from her workplace, the State drug laboratory in Amherst, MA (the "Lab") and using them while she worked. Farak's thefts and drug use were ultimately discovered. She was prosecuted, pled guilty and was incarcerated.

Other defendants in the instant litigation – employees of the Massachusetts State Police (MSP), and Springfield Police Department (SPD) -- seized evidence from Farak's impounded car that demonstrated that Farak had been stealing and using drugs from the Lab as far back as 2004 and that at time that she tested at least one of the heroin samples in the Penate case, she was under the influence of a mind altering drug. The other defendants in this litigation are Farak's supervisors at the Lab and the attorneys in the Attorney General's Office (AGO) who were

1

involved in Farak's prosecution.   This evidence of Farak's longstanding drug addiction and misconduct at the drug lab, which was seized from her car and turned over to the AGO, was withheld from the Penate's attorney in his underlying criminal case, despite his repeated attempts to obtain it.   The gravamen of Penate's claims against Farak is that she somehow should have disclosed her drug addiction, workplace drug use and the seizure of evidence from her car to Penate's criminal defense attorney.  That proposition has no legal foundation and is completely without merit.

## II. FACTUAL ALLEGATIONS

| | |
|---|---|
| ¶¶ 1-18 | Identify the parties |
| ¶¶ 33-81 | Describe the deplorable conditions of the State drug labs in Amherst and Hinton, descriptions of their instrumentations, testing procedures, budget issues, audits, and incompetence of their various directors and supervisors (the defendants, Nassif, Hanchett and Salem.) **No factual allegations against Farak in these paragraphs.** |
| ¶¶ 82-92 | Describe Farak's drug use at the Lab began in 2004 when she used the Lab's drug standards of methamphetamine oil, amphetamine, phentermine, ketamine, cocaine, ecstasy, marijuana and LSD.  Her drug use escalated to stealing from the positive samples submitted by the police. |
| ¶¶ 93-109 | Describe problems at the Amherst lab relating to output, accreditation, budgeting. **No factual allegations against Farak in these paragraphs.** |
| ¶¶ 110-129 | Describe the undercover drug operation of the SPD that led to plaintiff's arrest on November 15, 2011 and next day arraignment, the submission of the suspected narcotics to the Amherst Drug Lab by the defendant SPD officer and the lab protocols related thereto. **No factual allegations against Farak in these paragraphs.** |
| ¶¶ 130-134 | Describe the SPD officer's non-adherence to lab protocols relating to the submission of sealed samples, Farak's use of that non-adherence to steal drugs from the samples delivered and the drug lab supervisor's alleged knowledge of the officer's misconduct. |

| ¶¶ 135-151 | Describe Farak smoking crack cocaine at the end of 2011 up to as much as 10-12 times a day, and being under the influence of drugs when she tested drug samples in plaintiff's case on December 22, 2011 and January 9, 2012. |
|---|---|
| ¶¶ 152-158 | Describe the action of an SPD defendant in retrieving the drug samples from the Lab that would be used against Penate. **No factual allegations against Farak in these paragraphs.** |
| ¶ 165 | July 1, 2012 the MSP took control of the Amherst Drug Lab from the Department of Public Health. **No factual allegations against Farak in this paragraph.** |
| ¶¶ 166-167 | August 8, 2012 plaintiff's counsel filed a motion to compel production of evidence in possession of the Amherst Drug lab, which was allowed in part. **No factual allegations against Farak in these paragraphs.** |
| ¶¶ 168-170 | September 2012, defendants, Han resigned and Nassif was fired for misconduct relating to the Hinton Drug Lab and a different chemist, Amy Dookhan. **No factual allegations against Farak in these paragraphs.** |
| ¶¶ 171-176 | Serious improprieties and discrepancies were discovered at the Amherst Drug Lab by Hanchett, Salem and MSP auditors. **No factual allegations against Farak in these paragraphs.** |
| ¶¶ 177-179 | November 18, 2012, Farak furnished a Chemist Discovery Packet in response to plaintiff's motion to compel in which she falsely vouched for the Amherst Drug Lab testing procedures, consistent with Hanchett's and Salem's policy of concealing the lab's deficiencies. |
| ¶¶ 178-187 | Describe in detail how Farak manufactured crack cocaine while working in the Amherst Lab, how during the first week of 2013 she left an incriminating beaker with white residue, which was discovered by Hanchett and how Hanchett believed the beaker was left behind by an employee's daughter doing a science experiment. |
| ¶¶ 188-198 | Describes the beginning of the criminal investigation against Farak. |
| ¶¶ 199-201 | Describes the seizure of over 300 pages of documents from Farak's car, on January 18, 2013, consisting in part of a diary she was keeping for her drug addiction treatment provider ("Mental Health Worksheets"), which documented her use of narcotics at the Lab. These worksheets became known later as "Farak admissions." ¶ 264. **No factual allegations against Farak in these paragraphs.** |
| ¶¶ 202-211 | The Mental Health Worksheets were brought to the attention of various MSP defendants and defendant Kaczmarek, the Assistant Attorney General assigned to prosecute Farak. These worksheets were misrepresented as "assorted lab |

paperwork" by the MSP defendants. **No factual allegations against Farak in these paragraphs.**

¶ 212  January 22, 2013 Farak was arraigned in Belchertown District Court.

¶¶ 213-231  Describe the misguided efforts by the AGO and MSP defendants to prevent the Farak case from getting complicated with additional evidence of her drug tampering and of the drug lab deficiencies. **No factual allegations against Farak in these paragraphs.**

¶¶ 232-239  Describe how the Mental Health Worksheets were intentionally withheld from the Commonwealth's eleven District Attorneys, which would have included the prosecutor from the Hampen County District Attorney's office who was handling the criminal case against Penate. **No factual allegations against Farak in these paragraphs.**

¶¶ 240-351  Describe Penate's attorney's multiple efforts to obtain the material seized from Farak's car and the concerted and successful efforts of the defendants, Foster, Kaczymarek, Ravitz and Ballou to thwart him at every turn. During this time period when Penate's attorney was trying to obtain potentially exculpatory evidence, three Superior Court judges (Rup, Kinder and Page) were misled by these defendants. **No factual allegations against Farak in these paragraphs.**

¶¶ 352-374  Describe Penate's criminal trial at which the integrity of the police investigation against him were hotly contested issues. **No factual allegations against Farak in these paragraphs.**

¶¶ 375-377  December 13, 2013 Penate was convicted on a single count of distributing a Class A Substance and sentenced three days later to state prison. N**o factual allegations against Farak in these paragraphs.**

¶¶ 378-379  Attorneys who were prosecuting Farak, Foster, Kaczymarek, were informed of the outcome in Penate's case. **No factual allegations against Farak in these paragraphs.**

¶ 380  Penate was depressed in prison. **No factual allegations against Farak in this paragraph.**

¶ 381  January 6, 2014, Farak pled guilty to the charges against her.

¶ 382-397  Describe Penate's attorney's post-conviction efforts, on or about July 2014, which led to his ultimate success in obtaining the Farak documents, the consolidation of Penate's claim for post-conviction relief with nine other "Farak defendants," the six-day evidentiary hearing held in front of Judge Richard J. Carey, and his

issuance of a 127 page decision dismissing Penate's conviction and finding that Kaczmarek's and Foster's deliberate withholding of exculpatory evidence (i.e., the Farak documents) "qualifies as a fraud upon the court." **No factual allegations against Farak in these paragraphs.**

### III. THE COMPLAINT FAILS TO COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE

FRCP 8(a) (2) *requires* that a pleading *must* contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The language of this rule is mandatory, not discretionary. Penate's complaint is neither short nor plain and should be dismissed.

A. NOT SHORT

The complaint contains 464 separate paragraphs and 16 defendants, comprising five different categories: Lab supervisors (4), Springfield Police Department (4), Massachusetts State Police (3), Attorney General's Office (3) and one drug addicted chemist, Sonja Farak. The overwhelming majority of the allegations in the complaint are not against Farak.

B. NOT PLAIN

The meaning of the word "plain" can be found in FRCP 8(d), which states that "each allegation must be simple, concise and direct." These attributes cannot be ascribed to Penate's complaint. In his attorney's own words, the complaint describes "multiple, overlapping conspiracies." Farak took no part in any of them.

C. CLAIMS AGAINST FARAK SHOULD BE DISMISSED

This court has the power to dismiss the Penate's claims against Farak for his failure to comply with FRCP 8(a)(2) and 8(d). Kuehl v. FDIC, 8 F. 3d 905, 907-909 (1st Cir. 1993). The reason this remedy is appropriate is that "unnecessary prolixity in a pleading places an unjustified burden on the district judge and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage."  5 Charles Alan Wright &

Arthur R. Miller, Fed. Practices & Procedures, § 1281, 709 (3d ed. ). See, Jackson v. Polaroid Corp., 181 F.3d , (1st Cir. 1999) (affirming dismissal of 350-paragraph complaint for noncompliance with FRCP 8.) Neither this court, nor Farak, should have to wade through this "mass of verbiage." This is reason alone to let Farak out of this litigation.

IV. PENATE'S SECTION § 1983 CLAIM AGAINST SHOULD BE DISMISSED.

A. LEGAL STANDARD

The constitutional claim against Farak (Count I) fails to state a claim upon which relief can be granted. FRCP 12(b)(6). The legal standard for dismissal under FRCP 12(b)(6) is well-known to this court and thus will be described only briefly. For decades the United States Supreme Court followed the principle in Conley v. Gibson that a complaint that supplied *notice* should not be dismissed unless it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45 (1957). This was commonly known as notice pleading. The Court heightened the pleading standards in Bell Atlantic v. Twombly, 550 U.S. 544 (2007) and its progeny. A pleading must now satisfy a "plausibility standard." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The make-or-break standard... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable case for relief." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) *quoting* Seplveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

B. THERE IS NO LEGAL PRECEDENT FOR A SECTION 1983 CLAIM AGAINST FARAK

In the seminal case of Brady v. State of Maryland, 373 U.S. 83 (1963) the Supreme Court re-affirmed its prior holding that a prosecutor violates a criminal defendant's rights to due process when a conviction is obtained by *knowingly* using perjury or by *deliberate* suppression of evidence. More importantly, the Brady court extended prior case law by holding that a

6

violation of due process rights occurs "where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith* of the prosecution [emphasis supplied]." *Id.* at 87. Essentially, Brady established no-fault liability. The Brady duty of disclosure has been extended to include law enforcement personnel in possession of potentially exculpatory evidence. Kyles v. Whitley, 514 U.S. 419, 437-438 (1995). No Supreme Court case or First Circuit case has expanded Brady obligations to include a drug lab chemist such as Farak. None of the allegations in the complaint can justify such a change in the law.

Farak did not withhold anything from Penate. The exculpatory evidence at the center of Penate's claims is the "mental health diary," also known as the "Farak admissions" *that were seized from her car* by the MSP defendants and turned over to the AGO defendants. These documents were evidence of her drug thefts from the lab, her use of those drugs while she worked, and that this conduct dated back many years, including when she tested the drug samples in Penate's case. The documents at issue were seized on January 18, 2013. Farak was arrested and arraigned on January 22, 2013. *Farak had no control over these documents*. It would have been impossible for her to disclose them and Penate does not allege that she had the means or opportunity to do so, nor does he (or can he) allege that Farak had any knowledge of how the documents were being mishandled and withheld by the AGO, SPD and MSP defendants.

Farak agrees that her drug theft and drug use at the Lab were criminal misconduct. This does not constitute a violation of Penate's constitutional rights, no matter how creative are the pleadings. If it did, then she violated the constitutional rights of every criminal defendant whose drug samples she tested. Penate cannot seriously be arguing that she somehow should have informed him of her drug use at the Lab or of the conditions of the Lab.

The pleadings demonstrate the impossibility of Penate's suggestion that she owed him any duty in this respect. The allegations concerning the Lab's deficiencies, Farak's knowledge of the deficiencies and Farak's drug use date back to at least 2004. The complaint is devoid of any allegations (or reasonable inferences therefrom) as to when Farak should have made this disclosures and to whom. That complaint invites sheer speculation.

If Penate is allowed to proceed with a constitutional claim against Farak in these circumstances , so could the other Farak defendants which would literally lead to a tsunami of litigation.

## V. FARAK SHOULD BE DISMISSED FROM COUNT VIII, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The parameters of this State law tort are well-established. To make out a claim of intentional infliction of emotional distress against Farak, the plaintiff is required to show "that [Farak] intended, knew or should have known that [her] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 468 Mass. 379, 385 (2014). The standard for making this claim is "very high." Id. *quoting* Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1stCir. 1996). The bar is set so high that "there is no liability even if the defendant acted 'with an intent which is tortious or even criminal,' with 'malice,' or with 'a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017) *quoting* Polay at 385. The factual allegations against Farak fail completely to meet the requirements of this tort. The only remotely factual allegation that Penate makes about his emotions is that he "was depressed in prison. He missed his family gatherings – particularly birthday parties for the youngest members." ¶ 380.

Depression and missing birthday parties do not qualify as "extreme emotional distress." They are everyday occurrences in our society.

Given that this last count lumps all sixteen defendants together, notwithstanding their disparate roles and the "mass of verbiage" in the 56-page complaint, the court and Farak are left to guess *who did what* to Penate that caused so-called extreme emotional distress. Count VIII "merely parrots the elements of the cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) *quoting* Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009).

## VI. CONCLUSION

For all the reasons set forth in this memorandum, Count I against Sonja Farak should be dismissed and she should be dismissed from Count VIII (which is against all sixteen defendants).

Plaintiff, Sonja Farak
By her attorney,

*/S/ Susan Sachs*

_____
Susan Sachs, BBO #551206
75 Market Place
Springfield, MA 01103
413.732.0035; 413.733-9888 fax
attysusansachs@gmail.com

## CERTIFICATE OF SERVICE

I, Susan Sachs, certify that on April 25, 2018, I electronically filed the Defendant's Memorandum in Support of Motion to Dismiss by using the CM/ECF system which will send notification of said filing to all attorneys of record.

*/S/ Susan Sachs*

_____
Susan Sachs, Esq.