UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROLANDO PENATE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17-30119-KAR |
| | ) | |
| | ) | |
| ANNE KACZMAREK, JOSEPH | ) | |
| BALLOU, ROBERT IRWIN, RANDY | ) | |
| THOMAS, and SONJA FARAK, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST SONJA FARAK
(Dkt No. 303)

ROBERTSON, U.S.M.J.

Rolando Penate ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against

Sonja Farak ("Defendant") and others after having served more than five years in Massachusetts

state prison based on his criminal conviction for drug distribution, a conviction which was

ultimately dismissed with prejudice as a result of evidence that Defendant, a drug laboratory

chemist, was stealing and using lab samples to feed a drug addiction at the time she was

entrusted with the samples in Plaintiff's case.[1]  Presently before the court is Plaintiff's motion for

partial summary judgment against Defendant on Count I of his complaint alleging a violation of

42 U.S.C. § 1983 (Dkt. No. 303).  The parties have consented to this court's jurisdiction.  *See* 28

---

[1] The other remaining defendants are Anne Kaczmarek, who is a former Massachusetts Assistant
Attorney General, and Joseph Ballou, Robert Irwin, and Randy Thomas, who were members of
the Massachusetts State Police.  The motions for summary judgment by and against these
defendants will be addressed separately.

U.S.C. § 636(c); Fed. R. Civ. P. 73 (Dkt. No. 92).  For the following reasons, Plaintiff's motion for partial summary judgment is DENIED.

## I.      STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' when a rational factfinder could resolve it either direction."  *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).  "A fact is 'material' when its (non)existence could change a case's outcome."  *Id*. (citing *Borges*, 605 F.3d at 5).

A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'"  *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325).  If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute."  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor.  *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).

（正）

An unopposed motion for summary judgment does not automatically give rise to a grant of summary judgment. *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006). "Instead, 'the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate.'" *Id*. (alteration in original) (quoting *Mullen v. St. Paul Fire & Marine Ins. Co.*, 972 F.2d 446, 452 (1st Cir. 1992)). "It is well-settled that 'before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law.'" *Id*. (quoting *López v. Corporación Azucarera de P.R.*, 938 F.2d 1510, 1517 (1st Cir. 1991)). That said, the moving party generally prevails on an unopposed motion for summary judgment. *See Pérez-Cordero v. Wal-Mart P.R.*, 440 F.3d 531, 534 (1st Cir. 2006) ("In most cases, a party's failure to oppose summary judgment is fatal to its case.").

## II.    FACTUAL BACKGROUND[2]

In late 2004 or early 2005, Defendant, a chemist employed at the Amherst Drug Lab ("the Lab"), began stealing and using narcotics at the Lab (Dkt. No. 304 at ¶ 8). Among the narcotics Defendant stole and used were methamphetamine, amphetamine, phentermine, ketamine, LD, MDMA ("ecstasy"), MDEA, LSD, powder cocaine, and crack cocaine (Dkt. No. 304 at ¶ 9). Defendant's misconduct escalated over time, and, by the summer of 2012, Defendant was using crack cocaine multiple times per workday (Dkt. No. 304 at ¶ 41). By November of that same year, Defendant was stealing large quantities of powder cocaine from police submissions and using lab equipment to manufacture crack (Dkt. No. 304 at ¶ 46).

---

[2] Because Defendant did not submit a statement of material facts, the court deems admitted the facts set forth in Plaintiff's Statement of Undisputed Material Facts.  *See* L.R. 56.1

Defendant's increasingly brazen theft and use of narcotics in the Lab was finally uncovered in mid-January 2013.  At that time, Sharon Salem, the evidence officer at the Lab, advised Supervisor James Hanchett that two cocaine samples assigned to Defendant were not in the main evidence room where they were supposed to be (Dkt. No. 304 at ¶¶ 53, 73).  Hanchett contacted the Massachusetts State Police ("MSP"), and detectives in the MSP unit assigned to the Northwestern District Attorney's Office ("NWDAO") commenced an investigation (Dkt. No. 304 at ¶¶ 54-55).  Investigators quickly spoke to Defendant, who denied any wrongdoing and refused to consent to a search of her car, which she knew contained incriminating materials (Dkt. No. 304 at ¶¶ 60-63).  Undeterred, the investigators impounded the vehicle and towed it to the MSP barracks in Northampton, where it was searched and found to contain 289 pages of documents, some of which reflected Defendant's use of narcotics at the Lab and treatment for substance use disorder by clinicians at ServiceNet, Inc., going back as far as 2011 (Dkt. No. 304 at ¶¶ 10, 64-68).  Among other items, investigators found a ServiceNet Diary Card memorializing Defendant's use of narcotics at the Lab on Thursday, December 22, 2011, on which Defendant wrote, "tried to resist using @ work but ended up failing" (Dkt. No. 304 at ¶¶ 11-12).

Defendant was arrested on January 19, 2013, and arraigned in the Eastern Hampshire District Court three days later (Dkt. No. 304 at ¶¶ 73, 80).  Following her arraignment, Defendant retrieved her car and discovered that the paperwork documenting her drug use at the Lab was no longer in the vehicle.  She surmised that it had been seized as evidence (Dkt. No. 304 at ¶ 82).

At Defendant's Superior Court arraignment three months later, Assistant Attorney General Anne Kaczmarek, who appeared for the prosecution, filed a First Certificate of

Discovery, which stated that she had provided various materials to Defendant's counsel, Elaine

Pourinski, including seven pages of "Paperwork recovered from M/V" (Dkt. No. 304 at ¶¶ 81,

86-87).  Kaczmarek told Pourinski that her office considered the mental health paperwork found

in the car to be "privileged" and promised that the documents would not be disclosed to any so-

called "Farak Defendants" in pending criminal cases in which Defendant had signed the drug

certificate (Dkt. No. 304 at ¶ 88).

Plaintiff was one of these "Farak Defendants" (Dkt No. 304 at ¶ 74).  In late December

2011 and early January 2012, Defendant had analyzed substances purchased or seized by the

Springfield police from 57 Johnson Street, where narcotics detectives had executed a search

warrant and arrested Plaintiff, who was present at the scene.  He was charged with three counts

of distributing heroin and possessing heroin and cocaine with intent to distribute (Dkt. No. 304 at

¶¶ 1-5).  Defendant analyzed the samples from Plaintiff's case over three separate days in late

2011 and early 2012.  Defendant signed a drug certificate attesting that the substance she

analyzed on December 22, 2011, contained heroin.  December 22, 2011, was the same day she

had "tried to resist using @ work but ended up failing.  Defendant analyzed other samples from

Plaintiff's case on January 6 and 9, 2012, and attested that those substances contained heroin or

cocaine (Dkt. No. 304 at ¶ 5).  Plaintiff was indicted on February 1, 2012, and Eduardo

Velazquez, an Assistant District Attorney in the Hampden County District Attorney's Office

("HCDAO"), was assigned to prosecute Plaintiff (Dkt. No. 304 at ¶¶ 16-17).

After Defendant's arrest on January 19, 2013, Velazquez had the discretion not to move

forward with Plaintiff's prosecution in light of Defendant's malfeasance, but he decided to

proceed because, not being privy to the ServiceNet Diary Card, he had no reason to believe that

Defendant was engaged in misconduct at the Lab in December 2011 and January 2012, when she

analyzed the substances seized in Plaintiff's case (Dkt. No. 304 at ¶¶ 76, 79).  In June 2013,

Velazquez arranged to have the samples in Plaintiff's case tested by William Hebard, the

supervisor at the Drugs of Abuse Laboratory at the UMass Medical School in Worcester (Dkt.

No. 304 at ¶ 90).

On July 15, 2013, Plaintiff filed a motion to dismiss the drug charges against him based

on Defendant's egregious misconduct and the government's noncompliance with its obligation to

turn over exculpatory evidence (Dkt. No. 304 at ¶ 100).  Hampden County Superior Court Judge

Mary-Lou Rup issued an order on July 23, 2013, stating that:

> an evidentiary hearing must be conducted on the following issues:
> (i) if Ms. Farak and/or the Amherst drug lab engaged in egregious
> misconduct in the handling, storage, and analysis of suspected
> narcotics during the time period between November 2011 and
> January 2012, when the Amherst drug lab had custody and control
> of the alleged substances related to the defendant's case; (2) if such
> misconduct has substantially prejudiced the defendant or
> irreparably harmed his right to a fair trial; or (3) if such egregious
> misconduct was deliberate and intentional, warranting a
> prophylactic sanction of dismissal

(Dkt. No. 304 at ¶ 101).  Defendant was summonsed to testify at this proceeding, but she

exercised her Fifth Amendment rights and did not disclose that her misconduct at the Lab

encompassed the time-period between November 2011 and January 2012 (Dkt. No. 304 at ¶ 102-

03).  Following the evidentiary hearing, Hampden County Superior Court Judge C. Jeffrey

Kinder denied Plaintiff's motion to dismiss, concluding that while there was "powerful evidence

that Farak was stealing cocaine and replacing it with other substances," there was "insufficient

evidence before [him] that … she was engaged in misconduct in November 2011, and January of

2012, when the samples in [Plaintiff's] case were tested" (Dkt. No. 304 at ¶¶ 124-25).

Plaintiff's trial took place between December 9 and 13, 2013 (Dkt. No. 304 at ¶¶ 127,

146).  He was precluded from introducing any Farak-related evidence (Dkt. No. 304 at ¶¶ 128-

29).  Plaintiff was ultimately convicted of one count of distributing a class A substance.  He was

acquitted of four other drug charges, and the court allowed Plaintiff's motion for required

findings of not guilty with respect to firearm and ammunition related charges (Dkt. No. 304 at ¶¶

133, 135, 146).  Hampden County Superior Court Judge Tina Page sentenced Plaintiff to not less

than five years and not more than seven years in state prison (Dkt. No. 304 at ¶ 147).

        Defendant pled guilty to criminal charges against her on January 6, 2014.  She did not

reveal the full scope of her wrongdoing at her change of plea and sentencing (Dkt. No. 304 at ¶¶

149-150).

        On July 21, 2014, Plaintiff's counsel filed a motion to inspect the evidence seized from

Defendant's vehicle on behalf of another Farak defendant, which was granted (Dkt. No. 304 at

¶¶ 151-52).  After the inspection, Plaintiff's attorney sent an 11-page letter to the Massachusetts

Attorney General's Office ("AGO") detailing the significance of the previously undisclosed

evidence (Dkt. No. 304 at ¶ 153).  Thereafter, on November 13, 2014, the AGO disclosed to the

Commonwealth's district attorneys the 289 pages of documentary evidence seized from

Defendant's vehicle, including the ServiceNet Diary Card indicating that Defendant had used

drugs at work on December 22, 2011 (Dkt. No. 304 at ¶¶ 154-55).

        In May 2015, Plaintiff filed a motion for a new trial based on this newly discovery

evidence, which was allowed with the assent of the HCDAO (Dkt. No. 304 at ¶156, 159).

Following a grant of immunity, Defendant testified before an investigatory grand jury and

admitted to stealing and using narcotics at the Lab from late 2004/early 2005 until her arrest in

January 2013 (Dkt. No. 304 at ¶¶ 157-58).  On June 26, 2017, Hampden County Superior Court

Judge Richard J. Carey issued a 127-page decision dismissing Plaintiff's conviction with

prejudice (Dkt. No. 304 at ¶ 160).  According to Velazquez, had he known prior to Plaintiff's

trial that Defendant was using illicit drugs at the Lab while she had custody of and was analyzing

the samples in Plaintiff's case, he would have dismissed the charges against Plaintiff (Dkt. No.

304 at ¶ 164).

### III.    DISCUSSION

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or

immunities secured by the Constitution and laws" by any person acting "under color of any

statute, ordinance, regulation, custom, or usage, of any State or Territory."  42 U.S.C. § 1983.

"The threshold question in a § 1983 suit is whether there has been a violation of a federally

secured right." *Drumgold v. Callahan*, 707 F.3d 28, 49 n.13 (1st Cir. 2013) (citing *Baker v.

McCollan*, 443 U.S. 137, 140 (1979)).  In addition to deprivation of a right, a plaintiff also must

establish "a causal connection between the actor and the deprivation, and state action." *Sanchez

v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (citing 42 U.S.C. § 1983).

Plaintiff alleges that his constitutional due process rights were violated by Defendant's

withholding of material exculpatory evidence of her theft of, use of, and tampering with

narcotics at the Lab, which he asserts was in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

The Supreme Court in *Brady* held that "the suppression by the prosecution of evidence favorable

to an accused upon request violates due process where the evidence is material either to guilt or

to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87.

"Evidence is favorable to a defendant if it is either exculpatory or impeaching in nature."

*Drumgold*, 707 F.3d at 38-39.  Evidence is "material" when there is a reasonable probability that,

had the prosecution disclosed the evidence, the trial proceedings would have resulted

differently.  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

More than twenty years after *Brady*, in *Kyles v. Whitley*, 514 U.S. 419 (1995), the

Supreme Court "held that the disclosure obligation imposed by *Brady* extends to evidence

known only to police officers …." *Haley v. City of Boston*, 657 F.3d 39, 49 (1st Cir. 2011)

(citing *Kyles*, 514 U.S. at 437-38).  However, "the responsibility for obtaining and disclosing

such evidence remains the duty of the prosecutor, and not the police officer."  *Id*. (citing *Kyles*,

514 U.S. at 437-38).  Withal, the First Circuit has since recognized that "law enforcement

officers have a correlative duty to turn over to the prosecutor any material evidence that is

favorable to a defendant."  *Drumgold*, 707 F.3d at 38 (citing *Moldowan v. City of Warren*, 578

F.3d 351, 381 (6th Cir. 2009); *McMillian v. Johnson*, 88 F.3d 1554, 1567 (11th Cir. 1996)).

Here, Defendant was not a law enforcement officer but rather a state-employed lab

chemist.  Plaintiff glosses over this distinction, arguing that "[t]he duty to disclose exculpatory

evidence runs not just to prosecutors, but 'others acting on the government's behalf in the case'"

(Dkt. No. 305 at 6-7 (quoting *Kyles*, 514 U.S. at 437)).  This is not precisely what *Kyles* said.

Instead, the *Kyles* Court held that "the individual prosecutor has a duty to learn of any favorable

evidence known to the others acting on the government's behalf in the case, including the

police."  *Id*. at 437.  It is not a foregone conclusion from this holding that state-employed lab

chemists, such as Defendant, have a duty to criminal defendants, such as Plaintiff, to turn over

material exculpatory evidence to the prosecutor.

At the motion to dismiss stage, this court indicated that it was persuaded that laboratory

chemists have disclosure obligations under *Brady*.  *Penate v. Kaczmarek*, Civil Action No. 3:17-

cv-30119-KAR, 2019 WL 319586, at *9 (D. Mass. Jan. 24, 2019), *rev'd in part, vacated in part*,

*Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019).  The First Circuit, in reversing this court's

decision denying the motion to dismiss Plaintiff's § 1983 claim against James Hanchett,

Defendant's supervisor at the Lab, stated that it "harbor[ed] grave doubts … that it was clearly

established as early as 2012 that lab chemists could be held liable for withholding exculpatory

evidence under *Brady* …."  *Hanchett*, 944 F.3d at 366.[3]  The statement strongly suggests that the

First Circuit would find Defendant entitled to qualified immunity as to Plaintiff's *Brady* claim.

One would expect that, in the normal course, Defendant would have raised the defense of

qualified immunity in opposition to Plaintiff's motion for partial summary judgment.  Defendant,

however, is self-represented in this case and Plaintiff's motion is unopposed.  Nor has Defendant

filed her own motion for summary judgment.  It is unclear whether the court has the authority to

consider the defense *sua sponte* at summary judgment.[4]  While the First Circuit has not spoken

on the issue, the majority of federal courts of appeals have taken the view that district courts are

not empowered to raise the affirmative defense of qualified immunity *sua sponte*.  *Compare*

*Summe v. Kenton Cty. Clerk's Office*, 604 F.3d 257, 269-270 (6th Cir. 2010) (declining to

address qualified immunity on appeal where the district court *sua sponte* held that the defendant

was entitled to qualified immunity, because the defendant waived that defense at summary

judgment); *Straub v. Does*, 63 Fed. Appx. 309, 311 (9th Cir. 2003) (unpublished) (holding that

the district court erred in raising qualified immunity *sua sponte* because "[q]ualified immunity is

an affirmative defense that must be raised and affirmatively established by the Defendants, not

---

[3] At oral argument on the instant motion, Plaintiff's counsel adopted the characterization of this statement as *dicta* and indicated that it should not give this court pause in granting summary judgment to Plaintiff.  This court cannot disregard a considered statement by the First Circuit any more than the circuit courts of appeals could disregard a similar statement by the Supreme Court. *See United Nurses & Allied Prof'ls v. NLRB*, 975 F.3d 34, 40 (1st Cir. 2020) ("We are bound by the Supreme Court's 'considered dicta.'") (quoting *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991)).

[4] The court addressed Defendant's claim of qualified immunity at the motion to dismiss stage. While Defendant did not raise the defense in her papers, during oral argument, she adopted the arguments of certain other defendants, including Hanchett, who had squarely raised the defense.

the district court"); *Lee v. Myers*, 92 F.3d 1185, 1996 WL 444460, at *2 (6th Cir. Aug. 6, 1996)

(unpublished) ("It is ordinarily error to raise an affirmative defense *sua sponte* unless the defense

is obvious from the face of the complaint."); *Moore v. Morgan*, 922 F.2d 1553, 1557-58 (11th

Cir. 1991) (noting that, where the defendant officials waived the affirmative defense of qualified

immunity, "the magistrate judge improperly injected the issue of qualified immunity into the

case"); *with Lillo ex rel. Estate of Lillo v. Bruhn*, 413 Fed. Appx. 161, 162 (11th Cir. 2011)

(unpublished) (finding no error on the part of the district court in determining *sua sponte* that the

defendants were entitled to qualified immunity).  Relying on this authority, the court will not

address *sua sponte* whether Defendant is entitled to qualified immunity at this time.  She remains

entitled to raise the defense at trial.  *Brust v. City of Worcester*, 947 F. Supp. 2d 143, 145 (D.

Mass. 2012) ("'[D]efendants may raise a claim of qualified immunity at three distinct stages of

the litigation' – in a motion to dismiss at the pleading stage, at summary judgment, and as an

affirmative defense at trial.") (quoting *Guzmán–Rivera v. Rivera–Cruz*, 98 F.3d 664, 667 (1st

Cir. 1996)).

Turning to the substance of Plaintiff's claim, a plaintiff asserting a *Brady* violation must

prove that: 1) the evidence is favorable to the accused because it is exculpatory or impeaching, 2)

the evidence was suppressed, either willfully or inadvertently, and 3) prejudice ensued, meaning

that "'there is a reasonable probability' that the result of the trial would have been different if the

suppressed documents had been disclosed to the defense."  *Strickler v. Greene,* 527 U.S. 263,

281-82, 289 (1999).  In addition, "while a prosecutor's duty to disclose is absolute, to recover

damages from other law enforcement officials for a *Brady* violation, a § 1983 plaintiff must

prove the requisite *mens rea*."  *Stewart v. Wagner*, 836 F.3d 978, 982 (8th Cir. 2016).  *See also*

*Cok v. Cosentino*, 876 F.2d 1, 4 (1st Cir. 1989) ("The Supreme Court has made plain that due

process, whether procedural or substantive, is not implicated by mere negligence of persons acting under color of state law.") (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986)).

Addressing the question of *mens rea* first, the First Circuit has not identified what state of mind suffices to establish liability of a law enforcement officer under § 1983. *Drumgold*, 707 F.3d at 43 n.10.  While deliberate suppression of evidence is adequate, "[n]on-disclosure with a less culpable state of mind might [also] suffice."  *Id*. (citing *Haley*, 657 F.3d at 47).[5]  For example, in the Ninth Circuit, "[a] § 1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors."  *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009).  By contrast, in the Eighth Circuit, "[t]he recovery of § 1983 damages requires proof that a law enforcement officer … intended to deprive the defendant of a fair trial."  *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004).  *See also Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) (Wilkinson, J., concurring) (stating that § 1983 liability requires that a police officer have "intentionally withheld the evidence for the purpose of depriving the plaintiff of the use of that evidence during his criminal trial").

---

[5] Plaintiff argues that "*Drumgold* did make clear that 'intentionally or recklessly' withholding exculpatory evidence is 'clearly unlawful' and a proper basis for a Section 1983 claim" (Dkt. No. 305 at 9 (quoting *Drumgold*, 707 F.3d at 45).  However, this is not the holding of *Drumgold*. The *Drumgold* court explicitly declined to decide whether a reckless failure to disclose exculpatory evidence would suffice for purposes of a *Brady*-based Section 1983 claim, calling this a "difficult question."  *Drumgold*, 707 F.3d at 43 n.10.  Instead, what the *Drumgold* court identified as "firmly settled" was that a law enforcement officer could not deliberately suppress material evidence that was favorable to a defendant.  *Id*. at 43.  The court held that Drumgold had raised this claim, which arose under *Mooney v. Holohan*, 294 U.S. 103 (1935), and *Pyle v. Kansas*, 317 U.S. 213 (1942), "in which the Supreme Court held that a state actor violates a criminal defendant's due process rights by the knowing use of perjured testimony or the deliberate suppression of evidence leading to the defendant's conviction."  *Id*. at 38 (citing *Brady*, 373 U.S. at 86).

As a general matter, "[c]ases in this circuit suggest that government officials may be held liable for a deprivation of life, liberty, or property without due process if their conduct reflects a reckless or callous indifference to an individual's rights." *Germany v. Vance*, 868 F.2d 9, 17-18 (1st Cir. 1989) (citing *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 831 (1st Cir. 1987); *Clark v. Taylor*, 710 F.2d 4, 9 (1st Cir. 1983)).  Accordingly, this court will assume without deciding that the First Circuit would align itself with the Ninth Circuit and find deliberate indifference or reckless disregard sufficient with respect to a failure to comply with the *Brady* directive to disclose exculpatory evidence.  "An official displays … reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Id*. at 18.  In *Germany*, the First Circuit acknowledged that the distinction between "'negligence,' 'reckless or callous indifference,' and 'intentional' conduct can be elusive." *Id.* 18 n.10.  For purposes of defining these states of mind, the court stated that reckless or callous indifference should be viewed "as a lesser form of intent." *Id.*  "A reckless or callously indifferent violation occurs … if the official believes (or reasonably should believe) that his conduct is *very likely* (but not certain) to result in … a [constitutional due process] violation." *Id.* (citing *Restatement (Second) of Torts)* § 500, cmt. f (1977); *Cook v. Avien, Inc.*, 573 F.2d 685, 692 (1st Cir. 1978)).  Additionally, this court takes into consideration the principle, most often applied in employment cases but applicable beyond that context, that "intent … is a matter generally deemed ill-suited to summary judgment – as the First Circuit has cautioned, 'courts must be exceptionally cautious in granting *brevis* disposition in such cases.'" *Chu v. Legion of Christ, Inc.*, 2. F. Supp. 3d 160, 176 (D.R.I. 2014) (quoting *In re Varrasso*, 37 F.3d 760, 764 (1st Cir. 1994)).  Parties contesting the question of intent at the

13

summary judgment stage must point to relevant evidence that has the potential for admissibility at trial. *See id.* at 176-77.

Here, Plaintiff asserts in conclusory fashion that Defendant's "decision to remain silent when she knew she had been tampering with drug samples and getting high at the time she analyzed the samples in Plaintiff's case was nothing short of intentional, and, without question, a reckless disregard for Plaintiff's constitutional right to this exculpatory information" (Dkt. No. 305 at 9-10 (citing *Germany*, 868 F.2d at 18)). Plaintiff does not cite to evidence of Defendant's state of mind or intent to support this assertion. It may be true that Defendant's failure to disclose was intentional in the sense that she intentionally did not speak up and disclose her malfeasance, but that is not enough. *See Germany*, 868 F.2d at 18 n.11 ("It is true that the evidence would support the finding that [Defendant's] omissions were deliberate in the sense of being consciously intended rather than inadvertent. … But the fact that an act or omission is deliberate, rather than inadvertent, does not mean that it should necessarily characterized as 'intentional.'"). In the court's view, notwithstanding the extensive record submitted by Plaintiff, it cannot be said as a matter of law that Plaintiff has shown that Defendant acted intentionally to deprive Plaintiff of a fair trial. Plaintiff has pointed to no evidence suggesting that Defendant intended, by withholding information about her misconduct in the Lab, to ensure Plaintiff's conviction. *Cf. Haley*, 657 F.3d at 46 (noting that the complaint alleged that the defendants' non-disclosure of exculpatory evidence was part of a deliberate attempt to secure a conviction without regard to guilt or actual innocence). On the facts as presented, a finder of fact reasonably could infer that Defendant's non-disclosure was motivated by the desire to protect herself from further criminal exposure, an impulse that would only indirectly have the effect of depriving Plaintiff of his *Brady* rights. Indeed, some evidence to which Plaintiff alludes in his

statement of facts supports the inference that Defendant was motivated by a desire to protect herself from the negative consequences of her criminal conduct (Dkt. No. 304 at ¶¶ 102-07).

Nor is it necessarily the case, on the record before the court, that Defendant "clearly knew (or reasonably should have known) that [her] failure to report [her wrongdoing] to [P]laintiff … was very likely to deprive [him] of [his] constitutionally protected liberty interest." *Germany*, 868 F.2d at 18-19.  As the First Circuit noted, it was not necessarily clearly established at the time that Defendant suppressed the information that her actions rose to the level of a constitutional violation, such that she could be said to have acted in reckless disregard for Plaintiff's constitutional rights.  *Penate*, 944 F.3d at 366.  Additionally, the undisputed facts establish that Defendant knew that law enforcement had seized incriminating materials from her car, including the ServiceNet Diary Card.  A finder of fact reasonably could infer that Defendant also knew that Kaczmarek, the prosecutor in her case, had come into possession of the mental health records that were in Defendant's vehicle at the time of her arrest, since Kaczmarek told Defendant's defense lawyer that Kaczmarek had those records and that they would be withheld from the Farak defendants as privileged.  In other words, Defendant knew that the Commonwealth had possession of evidence that her theft and use of narcotics in the Lab dated back to 2011 (when she had tested the samples in Plaintiff's case) and that lawyers for the Commonwealth were making decisions as to whether to disclose this evidence to the Farak defendants.  Based on these facts, a factfinder could conclude that Defendant was not acting with reckless disregard of Plaintiff's constitutional rights in not herself disclosing the extent of her misconduct, but rather was relying on lawyers for the Commonwealth to do so to the extent that doing so was constitutionally necessary.

Because Plaintiff has not shown as a matter of law that Defendant acted with deliberate indifference to or reckless disregard for Plaintiff's due process rights in withholding evidence from prosecutors, Plaintiff has not shown that he is entitled to summary judgment.  Having so found, the court declines to address the other elements of Plaintiff's claim at this time.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's motion for partial summary judgment against Defendant (Dkt. No. 303) is DENIED.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  February 10, 2022